**TEXAS ELECTRIC SERVICE COMPANY,
Appellant,**

v.

**J. M. YATER, et ux., et al., Appellees.**

**No. 6285.**

Court of Civil Appeals of Texas,
El Paso.

April 11, 1973.

Rehearings Denied May 2, 1973.

Turpin, Smith, Dyer, Harman & Osborn, Max N. Osborn, Midland, Cantey, Hanger, Gooch, Cravens & Munn, Jack C. Wessler, Ft. Worth, for appellant.

Brown, Hamby & Bancroft, Robert D. Brown, E. L. Hamby, Big Spring, for appellees.

## OPINION

WARD, Justice.

Texas Electric Service Company appeals from a judgment in a condemnation case based upon jury findings concerning an easement acquired for an electrical transmission line. Complaints before us center on the trial Court's rulings on the composition of the jury, on the introduction of evidence, and as to the alleged absence and insufficiency of evidence relating to the damages to the remainder of the property. The judgment of the trial Court is affirmed in part and reversed and remanded in part.

The date of the taking was December 1, 1970. Thereby, the Appellant obtained a right-of-way 150 feet wide and approximately one mile long, consisting of an 18.-436 acre strip of land across the south part of a section of mesquite pasture and rural homesites located approximately six miles southwest of Stanton. The easement has five towers located on it, each being a steel "H" frame, some 75 feet tall carrying six electrical and two static lines. There was no issue concerning the right or extent of the taking, the only issues being the value of the easement taken and the damage to the remainder.

The landowners and Appellees, J. M. Yater and Carroll Yater, at one time owned all of the section of land across which this easement was located. Eleven months prior to the date of taking, they entered into a lease with the Appellee, Fred Hernandez, under the terms of which they leased to him and gave him an option to purchase 33.755 acres of land of which

4.54 acres lay within the right-of-way easement This Hernandez property was divided into three lots.

The Appellant's first point calls for an interpretation of Section 14, Acts 1971, 62nd Leg., p. 2801, ch. 905, which is an amendment to Article 2094, Vernon's Ann. Tex.Civ.St. The amendment, Section 14, is also found at page 11 of the pocket parts, under Article 2094, supra, and is to the following effect:

"Sec. 14. Once a prospective juror has been removed from a jury panel for cause, by peremptory challenge, or for any reason, he shall be immediately dismissed from jury service and shall not be placed on another jury panel until his name is returned to the jury wheel and drawn again as a prospective juror."

On Tuesday of the week of trial, a jury was selected in the District Court of Martin County in a case styled Ruben Garza v. Texas Employers' Insurance Association. At that trial, six prospective jurors, H. R. Caffey, W. M. Tackett, Roy C. Challis, Mrs. Glen Brown, Leo Payne and Mrs. D. M. White, were excused from serving as a result of peremptory challenges exercised by the parties in that case. These six prospective jurors were then called back as members of the jury panel in this present condemnation case, which went to trial on Thursday of the same trial week.

Prior to the voir dire examination and again prior to exercising its peremptory challenges, the Appellant moved the Court to excuse the six named jurors who had been previously excused as the result of the peremptory challenges in the District Court case. These motions were overruled by the trial Court. Two of these six were then excused due to peremptory challenges exercised by the Appellant and one by peremptory challenge used by the Appellee. Thereafter, three of the complained of jurors, Mr. Tackett, Mr. Challis and Mrs. White, were selected and served on the jury which tried our condemnation case.

If a violation of the quoted statute was the only matter before us, we would be presented with serious error. McDonald in 3 Texas Civil Practice, Sec. 11.-04.1, has aptly classified the legal qualifications of petit jurors into: (a) Those prescribing basic qualifications applicable generally; (b) those exempting certain otherwise qualified jurors from service; and (3) those rendering otherwise qualified jurors incompetent in particular actions. It appears that a new statutory disqualification has been created under the last category, and the general rule is to the effect that where the Court erroneously overrules a challenge based upon a juror's statutory disqualification, the Court has no discretion and the complainant need not establish that probable injury resulted. Compton v. Henrie, 364 S.W.2d 179 (Tex. Sup.1963); Texas Electric Service Company v. Boyce, 486 S.W.2d 111 (Tex.Civ.App. —El Paso 1972, no writ).

The Honorable Carroll Yater, County Judge of Martin County, being disqualified as he was one of the parties to this suit, the parties by signed stipulation entered of record in accordance with the terms of Rule 11, Texas Rules of Civil Procedure, agreed that the Honorable R. W. Caton, District Judge of Martin County, would try the case as Special Judge. A County Court jury panel not being available, the parties then agreed to use the District Court panel drawn under the terms of Article 2096, V.A.T.C.S., in the trial of the condemnation suit in the County Court. They then told the Clerk that they would use that panel. This agreement or stipulation was not entered into in accordance with the terms of Rule 11, and the trial Court was called on to interpret the unrecorded agreement. The very purpose of the rule was to avoid this situation where a dispute arose among conscientious attorneys as to the meaning and scope of the stipulation. . Cantu v. Cantu, 253 S.W.2d 957 (Tex.Civ.App.—San Antonio 1952, no writ). As a penalty for failing to comply with the rule, the agreement is made unenforceable. But that alone is not before us. A District Court panel used in the County Court, absent statutory or rule authorization, has been described as illegal. Donegan v. State, 89 Tex.Cr.R. 193, 230 S.W. 166 (1921). At best, reversible error is present. See Heflin v. Wilson, 297 S.W.2d 864 (Tex.Civ.App.—Beaumont 1956, writ ref'd). However, the matter of irregularity in the manner of making up the jury panel is a matter of ready waiver. Waller v. Summers, 299 S.W.2d 752 (Tex.Civ.App. —Beaumont 1957, writ ref'd n. r. e.). As to the use of the District Court panel, the Appellant joined in urging its use, announced ready and has never made a complaint as to its use up to the point where its complaint does start. The point made by the Appellant is that it did not waive its right to object to the challenged jurors and that by its agreement it did not intend for them to serve. In summary, the Appellant is before the trial Court insisting that the case proceed to trial before an illegally or irregularly constituted panel legalized by a stipulation made without conformity to Rule 11, supra, but insisting in all good faith that its interpretation of the meaning of the stipulation prevail. The trial judge, under the terms of the Rule, refused to enforce that part of the stipulation which was in dispute. Any error was invited and should not result in a reversal.

If we be mistaken in the above, then we consider the stipulation as having been made in open court and entered of record as disclosed by the approved bill of exceptions in the transcript. In preparing its bill of exception, the Appellant called the District and County Clerks, and by this testimony developed that the attorneys had agreed to use in the condemnation case *the same jurors which had been duly selected to appear in District Court* for trial. As further reflected in the bill, the understanding of the trial judge as to the meaning of the agreement was that the panel in the District Court would be used. The assent of the Appellant to this understanding of the Court is also shown. As we inter-

pret the agreement, it was to the effect that the qualified jurors who were summoned to appear in the District Court would be used again in the County Court. The disqualification of the statute was waived, and the first point is overruled.

The second point concerns the action of the Court in overruling a challenge for cause leveled at Juror Leo Payne who on voir dire examination stated that he had a fixed opinion as to the issue of damages to the remainder of the land because of the construction of the power line. The Appellant then used a peremptory challenge to the juror and Mr. Payne did not serve. A statutory disqualification of the juror is reflected. Texas Electric Service Company v. Boyce, supra. But the juror not serving, there is no showing from this alone that the Appellant was required to take an objectionable person on the jury. It is in no position to complain. Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764 (Tex.Sup.1964); West Texas Utilities Company v. Bergstrom, 458 S.W.2d 548 (Tex.Civ.App.—Eastland 1970, writ ref'd n. r. e.).

. ▮ The Appellant complains of the introduction into evidence of a subdivision plat of the lots located in all but the eastern one-quarter of the tract of land and to the testimony as to their value by witnesses for the Appellees who based their opinions on a lot basis rather than on any unit basis. It was undisputed that the highest and best use of this land was as prospective rural homesites.

The property in question was originally purchased by J. M. and Carroll Yater in 1962 when they bought it as pasture land but with the expectations of finding sufficient water to create a farm. These expectations were faulty and to enable them to keep part of the property they decided to sell parts off in small tracts. After two sales of substantial size, what remained of the Yater property was rectangular in shape and in September, 1969, that proper-

ty on the east side which adjoined a dirt road was platted off into eight tracts. Most of these tracts contained ten acres, all fronting on the road and being about one-fourth of a mile long. These eight tracts had been sold or were under lease with option to purchase by the time of the taking. In September, 1970, after the survey was made regarding the electric transmission line, and after the Yaters knew that the transmission line would cross their remaining property, the balance of the property located to the west was platted into approximately 24 additional tracts, all similar in size to the original eight tracts located to the east. Two of these additional tracts were then sold by the time of the taking and one additional after the taking and before the trial. All of this property was entirely raw pasture land, was undeveloped by the Yaters, was not staked off, and the sixteen interior lots had no easements for access roads. Nothing was done in the way of improvements on the ground. No plat of any of the land was filed for record until the day of the trial and more than a year after the day of taking. Mr. Carroll Yater testified that sales of tracts were limited to four lots a year as they desired to retain the privilege of being able to report any profits on a capital gain basis for income tax purposes. All valuation witnesses for the landowners testified as to the valuations as to the land taken for the easement and in the remainder of the proposed subdivision on a lot basis and not on the parcels as a whole. These prices per lot were based on the anticipated revenues from the sale of these lots in the subdivision even though no improvements had been made, no streets were laid out, and no easements for streets or utilities were provided. Thus, the lots that remained with the Yaters were unmarked in any way on the ground, and adjoined each other as raw pasture land.

The rule from Lower Nueces River Water Supply District v. Collins, 357 S.W.2d 449 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.), is repeated in State v.

Curtis, 474 S.W.2d 635 (Tex.Civ.App.—San Antonio 1971, no writ), as follows:

"It has been repeatedly and consistently held, that where the property condemned is raw acreage it is not proper to admit in evidence hypothetical plats of non-existent subdivisions, the reason being that they tend to cause the jury to value the land as lots. The jury is to value the tract of land, and that only. They are not to determine how it could best be divided into building lots, nor to conjecture how such lots could best be sold, nor for what price. Opinion testimony as to the value must be based upon the value of the land as an entirety and not in parcels, unless there is some reason to value it in parcels, such as differences in the nature of the land."

The following from the Curtis case applies with equal force to the case before us:

"No attempt was made prior to the taking to lay out on the ground any part of said proposed subdivision. In fact, nothing was done other than platting of the subdivision on paper and filing such plat. In this situation, the trial court erred in introducing the plat of the proposed subdivision into evidence. Furthermore, landowners' value witnesses improperly considered the value of said tract, both the part taken, as well as the remainders, based upon the price that landowners could realize by selling the land lot by lot."

Without belaboring the point, this rule has been firmly established. City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954); State v. Willey, 360 S.W.2d 524 (Tex.Sup.1962); Minyard v. Texas Power & Light Company, 271 S.W.2d 957 (Tex. Civ.App.—Fort Worth 1954, writ ref'd n. r. e.); Continental Development Corporation v. State, 337 S.W.2d 371 (Tex.Civ. App.—Fort Worth 1960, no writ); 26 A. L.R.3d 780. The error in admitting the complained of plat and the testimony as to the valuation by lots of the Yater land amounted to such a denial of the rights of the Appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P. This is reflected where the remainder damage to the total of the Yater property outside of the easement is fixed by the Yater appraisers as being from $24,000.00 up to $29,000.00, while the Appellant's appraisers estimated no damage to this remainder. Figuring this remainder damage on an acreage basis, the jury found this damage to be at $192.00 per acre. This is even higher than that damage fixed by the jury to those acres which were within the easement on the Yater property. These errors call for a reversal as to that part of the judgment regarding the Yater Appellees.

■ No complaint is made by the Appellant as to the introduction of the plat of the eight lots on the east side of the property which included the three lots under the lease-option agreement with Mr. Hernandez. As stated, this plat had been made and the lots sold long prior to the taking. The price of each of these individual lots was admitted without objection and they were all used to show comparables. We fail to see where Appellant has been harmed by this testimony. The points made so far as they relate to the three Hernandez lots are overruled.

■ "No evidence" and "insufficient evidence" points are presented as to the jury findings as to the values of the remainders of both the Hernandez and Yater property after the taking. The assertion is made based on the condition of the undeveloped lots as previously discussed and on the admission made by the appraisers for the Appellees that their valuations were made without knowledge of any other comparable sales of properties which lay adjacent to newly installed transmission lines, and that they were unaware of any authorities which approved of such devaluations. Tennessee Gas & Transmission Co. v. Zirjacks, 244 S.W.2d 837 (Tex.Civ.App.—San Antonio 1951, writ dism'd); Jefferson

County v. Cohrt, 487 S.W.2d 444 (Tex. Civ.App.—Beaumont 1972, no writ). We find adequate testimony in the record to support the opinion of the Appellees' witnesses as to the damages to the remainder when the property is considered as adaptable for rural homesites. This support is in the testimony that the towers and cables are unsightly and would hurt the general appearance of the land; that radio and television reception would be adversely affected, that prospective purchasers would be frightened that their children might be hurt playing near the towers and the existence of a general fear in homeowners from lightning and of being near the lines during storms. As to the Hernandez three lots which had already been purchased for use as a rural homesite, the line lay across a portion of the northern lot, and admittedly destroyed that entire lot as a homesite. Also, the location of the county line made it very difficult and awkward for one to place a home on the remaining property if one still desired to live in Martin County. Considering the evidence in the most favorable aspect to support the findings, the "no evidence" points are overruled. The cases which distinguish the Zirjacks doctrine are applicable here. Texas Power & Light Company v. Trinity Valley Ranch Company, 395 S.W.2d 866 (Tex.Civ.App.—Dallas 1965, no writ); Texas Electric Service Company v. Etheredge, 324 S.W.2d 322 (Tex.Civ.App.—Eastland 1959, no writ).

We have considered the entire statement of facts in view of the insufficiency of the evidence points as they apply to the Hernandez property findings of the jury. Having considered all the evidence, these points as to the Hernandez property are overruled. In view of a remand as to the Yater property and the Yater judgment, the balance of the points regarding that property are not considered.

The judgment of the trial Court is affirmed so far as it applies to the Appellee, Fred Hernandez, and to those three lots leased by J. M. Yater and Carroll Yater to the said Fred Hernandez by that lease and option agreement dated January 1, 1970. That part of the judgment of the trial Court as it applies to the remaining Appellees and to their remaining property is severed and is reversed and remanded to the trial Court for retrial.