TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00357-CV






Glen Ray Pape, Appellant



v.



Guadalupe-Blanco River Authority, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY


NO. 6075-C, HONORABLE HOWARD S. WARNER, JUDGE PRESIDING 




 

 Appellant Glen Ray Pape appeals from the county court at law's judgment on the
jury's verdict granting him damages for temporary and permanent easements over his land acquired
through condemnation by appellee Guadalupe-Blanco River Authority (the Authority). At a bench
trial, the trial court determined that the Authority had the right to condemn permanent easements
involving about 4.373 acres of Pape's land. A jury trial on damages was held, and the jury found
Pape had suffered damages in the amount of $34,000. Pape appeals the trial court's entry of a
judgment on the verdict, contending that (1) the condemnation proceeding did not strictly comply
with chapter 21 of the Property Code, (2) the trial court erred in denying Pape pretrial discovery, and
(3) the trial court erred in excluding evidence of two comparable sales. We will affirm.


Did the trial court have jurisdiction over the cause?

 Pape alleges that the trial court never had jurisdiction over this cause because of
violations of the procedures established by chapter 21 of the Property Code. Therefore, he argues,
the trial court judgment granting the Authority easements over Pape's property in exchange for
$34,000 in damages is void for want of jurisdiction. (1)

 Chapter 21 sets out the steps that must be followed in a condemnation action. Tex.
Prop. Code Ann. §§ 21.001-.022 (West 1984 & Supp. 2001) & §§ 21.041-.065 (West 2000). The
condemnor must file a petition for condemnation with the appropriate county clerk or, if there is no
county court at law, the district clerk. Id. § 21.013 (West Supp. 2001). If there is more than one
county court at law or district court, the clerk "shall assign an equal number of eminent domain cases
in rotation to each court with jurisdiction that the clerk serves." Id. § 21.013(d). The judge of the
court to which the case is assigned appoints three disinterested landowners as special commissioners
to assess the condemnee's damages. Id. § 21.014(a) (West 1984). The special commissioners
"promptly schedule a hearing . . . at the earliest practical time," giving the parties at least eleven days
notice of the hearing date. Id. §§ 21.015, .016 (West 1984). If either or both parties are dissatisfied
with the special commissioners' award, they may object to the award, and the cause is then tried as
any other civil case. Id. § 21.018 (West 1984). Chapter 21 does not address whether the special
commissioners may set a hearing or otherwise act before taking their oaths of office, nor does it
provide that a condemnation action is void if all documents are not properly file marked. 

 On March 19, 1999, the Authority filed its petition in condemnation with the Hays
County Clerk, seeking permanent and temporary easements and rights of way across Pape's land for
the purpose of building water pipelines from the Guadalupe River to water treatment facilities in the
City of San Marcos. Hays County has two county courts at law. Tex. Gov't Code Ann. § 25.1071
(West Supp. 2001). The judge of the Hays County Court at Law No. 1 appointed three special
commissioners, who took their oaths of office on March 22, 24, and 25. On March 22, an Order
Setting Hearing Before Special Commissioners and a Notice of Hearing was executed by the
commissioners, only one of whom had taken his oath of office. On March 23, the county clerk
assigned the cause to County Court at Law No. 1. Pape did not appear at the hearing before the
special commissioners, and the commissioners awarded Pape $14,703 in damages. Pape objected
to the award, and the case was set on the jury docket of County Court at Law No. 1.

 Pape complains that the judge of the County Court at Law No. 1 appointed the special
commissioners before the case was assigned to that court and that the commissioners set the hearing
before two of them had taken their oaths of office. He also notes that two documents, the order
setting the special commissioners' hearing and the order assigning the cause to the County Court at
Law No. 1, are not file marked. He correctly states that the condemning authority must show that
the procedures set out in chapter 21 of the Property Code were strictly followed. See PCP Gas
Prods., Inc. v. Fariss, 620 S.W.2d 559, 560 (Tex. 1981). However, he mistakenly argues that the
alleged irregularities are such that they violate chapter 21.

 Even if we assume the special commissioners should not have been appointed until
the cause was assigned to the County Court at Law No. 1, the judges of the two county courts at law
in Hays County have the statutory authority to act for one another. Tex. Gov't Code Ann.
§ 74.094(a) (West Supp. 2001). Therefore the order appointing the special commissioners would
have been valid even if the cause had been assigned to the County Court at Law No. 2. We hold that
the special commissioners' appointments did not violate chapter 21. 

 Likewise, although section 21.014 requires the trial judge to appoint special
commissioners who "shall swear to assess damages fairly, impartially, and according to the law,"
and section 21.015 requires the commissioners to set a hearing at the earliest practical time, chapter
21 does not state that the commissioners must take their oaths of office before setting the hearing. 
Tex. Prop. Code Ann. §§ 21.014(a), (b), .015(a). There is a distinction between being appointed as
a special commissioner and being qualified to perform the substantive duties of a commissioner. 
See, cf. Tex. Prob. Code Ann. §§ 645, 699 (West Supp. 2001) (court may appoint guardian ad litem;
appointed guardian must qualify for duties by taking oath and filing bond); Tex. Civ. Prac. & Rem.
Code Ann. §§ 64.001, .022, .031 (West 1997 & Supp. 2001) (court may appoint receiver; appointed
receiver must be sworn before assuming duties such as possessing property, collecting rent, and
making transfers).

 As noted above, the procedures in chapter 21 must be strictly followed and liberally
construed to benefit the landowner. John v. State, 826 S.W.2d 138, 140 (Tex. 1992). For example,
the condemnation petition must describe the property sought and the purpose for which the property
will be used and must state that the condemning authority and the landowner could not agree on a
price for the land. Tex. Prop. Code Ann. § 21.012(b) (West 1984). The condemning authority must
give the landowner any appraisals it has received at the time it first offers to buy the land. Id.
§ 21.0111(a) (West Supp. 2001). Condemnation proceedings are held in the county where the
landowner lives if he lives in a county where at least part of the property is located. Id. § 21.013(a). 
Three disinterested special commissioners are appointed to determine damages fairly and in
accordance with the law. Id. § 21.014. The hearing is scheduled promptly and held at "the earliest
practical time and at a place that is as near as practical to the property being condemned or at the
county seat." Id. § 21.015(a). The landowner must receive sufficient notice of the hearing, and the
person serving the notice must certify how and when it was served. Id. § 21.016. The condemning
authority may not dismiss a condemnation proceeding after a special commissioners' award is made
in an attempt to obtain a lower award from a new panel of commissioners. Id. § 21.019(a) (West
Supp. 2001). All of the above procedures protect the landowner, ensuring proper notice of the
proceedings and the property sought, that the hearing is held promptly and at a place as convenient
as possible for the landowner, and that he receives a fair market price for the land taken. Allowing
the special commissioners to set the hearing before taking their oaths of office does not give an
advantage to either side of a condemnation proceeding and does not in any way harm the landowner.

 Setting a hearing date is not necessarily a judicial or quasi-judicial act; it is simply
an act of scheduling and does not require a reminder to the special commissioners that they must
assess damages fairly and in accordance with the law. Before conducting the hearing and receiving
evidence, these special commissioners properly swore to assess damages fairly and impartially as
required by law. See id. § 21.014. Further, penalizing the condemning authority for actions taken
by the commissioners would seem to imply that the authority had some control over the special
commissioners, thus making them less than disinterested. Absent any statutory prohibition to the
contrary, we hold that, once appointed, the special commissioners' mere housekeeping act of
choosing the hearing date did not violate chapter 21.

 As for the missing file stamps, Pape does not assert that any error or harm arose from
such omissions. The order appointing the special commissioners is not dated and lacks a file stamp
indicating the date of the order, but there is no evidence that it was filed before the petition was filed
with the clerk or after the commissioners set the hearing or that this irregularity somehow harmed
Pape. Likewise, that the order assigning the cause to the County Court at Law No. 1 lacks a file
stamp does not render the condemnation action void. The cause was required to be set before one
of the two Hays County courts at law, and, although Pape did attack the assignment in the trial court,
he does not raise this argument here and the record does not indicate that the assignment was
improperly made. We hold the filing of the condemnation petition, the assignment to the court, the
appointment of the special commissioners, and the setting of the hearing satisfied the statutory
requirements of chapter 21. We overrule Pape's first issue. (2) 


Did the trial court err in denying Pape's motions regarding pretrial discovery?

 The cause was originally set for a jury trial on January 18, 2000, and was continued
until March 8. On February 4, Pape served a request for discovery. On February 23, the Authority
filed a motion for protective order, arguing it should not have to answer Pape's request because it
was served at the end of the discovery period, making it impossible for the Authority to respond
within the discovery period. On March 1, the trial court granted the Authority's motion and denied
Pape's motion for a continuance or, alternatively, to modify the discovery period. Pape argues that
the trial court essentially put him to trial without any pretrial discovery, which he contends was an
abuse of discretion.

 We review a trial court's ruling on discovery matters for an abuse of discretion. Boon
Ins. Agency, Inc. v. American Airlines, Inc., 17 S.W.3d 52, 60 (Tex. App.--Austin 2000, pet.
denied). Likewise, we review the granting or denial of a motion for continuance for an abuse of
discretion. State v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988); Texas Dep't of
Human Servs. v. Green, 855 S.W.2d 136, 147 (Tex. App.--Austin 1993, writ denied). A trial court
abuses its discretion when it acts unreasonably or arbitrarily, without reference to any guiding
principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Boon Ins. Agency,
17 S.W.3d at 60. If a party requesting a continuance does not include an affidavit of diligence in
support of his motion, we generally will presume that the trial court did not abuse its discretion in
refusing the continuance. Southwest Country Enters., Inc. v. Lucky Lady Oil Co., 991 S.W.2d 490,
493 (Tex. App.--Fort Worth 1999, pet. denied). Generally, a party who does not use the rules of
discovery diligently is not entitled to a continuance. Wood Oil Distrib., 751 S.W.2d at 865. 

 Discovery in this cause was conducted under Level 2 of the Rules of Civil Procedure. 
See Tex. R. Civ. P. 190.1. Pursuant to Level 2, all discovery must be conducted during the discovery
period which runs from the date the suit is filed until the earlier of thirty days before the trial date
or nine months after the due date of the first response to written discovery. Id. 190.3(b)(1)(B). 
"[U]nless otherwise ordered or agreed, parties seeking discovery must serve requests sufficiently far
in advance of the end of the discovery period that the deadline for responding will be within the
discovery period." Id. cmt. 4. Interrogatories and requests for disclosure, production, and
admissions must be served on the opposing party no later than thirty days before the end of the
discovery period. Id. 194.1, 196.1(a), 197.1, 198.1. Oral depositions must be taken within the
discovery period unless agreed by the parties or approved by the court. Id. 199.2(a). 

 Pape filed his objections to the special commissioners' award on April 21, 1999. On
April 21, 1999, the Authority served a request for disclosure, and Pape responded on December 17. 
On July 29, 1999, the Authority served on Pape a request for production and interrogatories. Pape
responded to the interrogatories in December. Trial of this cause was originally set to begin January
18, 2000. On January 14 the trial court, acting on a motion filed by Pape, continued the trial until
March 8. On February 4 Pape mailed to the Authority his request for discovery, asking for a
response by March 5. At the hearing on the Authority's motion for a protective order, Pape argued
he needed more time because the continuance set the trial more than forty-five days ahead, but did
not give him sixty days, which would have allowed him to comply with the discovery rules by giving
the Authority thirty days to answer the discovery and making that deadline still thirty days from the
trial setting. Pape's sworn motion for a continuance or to modify the discovery schedule stated in
its entirety:


Now comes Defendant, GLEN RAY PAPE, and in response to Plaintiff's "Motion
for Protective Order," would respectfully show unto the Court the following:


This case was initially set for trial on January 17, 2000. However, because
Defendant had not received proper notice of the trial setting, the case was reset by the
Court to March 7, 2000, a period of time in excess of the 45 days required by
T.R.C.P. 245, and less than the 60 day period required by T.R.C.P. 190.3 and 190.5. 
In other words, it was impossible within the period of time ordered by the Court for
Defendant to take any kind of discovery. 


Accordingly, Defendant herein moves for a continuance in order that the discovery
request may mature, or in the alternative, moves for a modification of the discovery
period in accordance with Tex. R. Civ. P. 190.5. 


This motion for continuance is made not for delay but that justice may be done.

 

 Pape's motion does not comply with the requirements of rule 252, which requires a
motion for continuance to, among other things, describe the evidence sought, explain its materiality,
show the party requesting the continuance has used due diligence to obtain the evidence. Tex. R.
Civ. P. 252; Green, 855 S.W.2d at 147; see Hatteberg v. Hatteberg, 933 S.W.2d 522, 527 (Tex.
App.--Houston [1st Dist.] 1994, no writ). The trial court did not abuse his discretion in denying a
motion for continuance that did not meet the requirements of rule 252. See Green, 855 S.W.2d at
147; see also Lucky Lady Oil Co., 991 S.W.2d at 493.

 Further, this cause was pending for more than ten months before it went to trial. The
Authority served its discovery requests promptly, by the end of July 1999, more than seven months
before the trial began. In his first motion for a continuance, Pape contended he had not agreed to the
initial January trial setting and had not received proper forty-five day notice of the setting. See Tex.
R. Civ. P. 245. He stated he was not ready for trial on January 18, and asked the court to grant a
continuance "for a period of at least 45 days." He did not make any reference to a need for more
time to complete discovery. Pape had nine months to conduct discovery in a timely manner. He
received and responded to discovery served by the Authority. He received notice of the initial trial
setting on November 30 and, while he took issue with that setting, he was on notice that the trial
date, and thus the discovery deadline, were rapidly approaching. Had he filed his discovery requests
upon receiving the Authority's discovery requests or even upon receiving notice of the initial trial
setting, they would have been timely. We cannot say the trial court abused his discretion in denying
Pape's motion for a continuance or to modify the discovery schedule. See Wood Oil Distrib., 751
S.W.2d at 864-65; Green, 855 S.W.2d at 146-47; see also Hatteberg, 933 S.W.2d at 527. We
overrule Pape's second issue.


Did the trial court err in excluding two comparable sales from evidence?

 Finally, Pape contends the trial court erred in excluding from evidence two sales his
expert witness sought to use as comparable sales to show the value of the land being condemned. The admission and exclusion of evidence is within the sound discretion of the trial
court. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); Waldrep v. Texas
Employers Ins. Ass'n, 21 S.W.3d 692, 703 (Tex. App.--Austin 2000, pet. denied). We will not
reverse a ruling excluding evidence simply because we disagree with the decision. Buller, 806
S.W.2d at 226; Waldrep, 21 S.W.3d at 703. The party complaining of the exclusion of evidence
must show (1) the trial court erred, and (2) that error probably resulted in an improper judgment. 
Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). A successful challenge to an
evidentiary ruling usually requires the complaining party to show, based on the entire record, that
the judgment turns on the challenged evidence. Alvarado, 897 S.W.2d 753-54. We ordinarily will
not reverse an erroneous evidentiary ruling if the challenged evidence is cumulative of other
evidence and not controlling on a material issue. Gee, 765 S.W.2d at 396.

 Pape's expert witness, Kirby Gholson, testified as to the value to be placed on the
land being condemned. Before the taking, Pape's tract of land was 225.25 acres; the Authority
condemned 4.373 acres of that land for permanent easements (the Authority also used about another
7 acres of Pape's land for temporary construction easements). Gholson divided the 225.25 acre tract
into two parcels for the purpose of valuing it because 8.36 acres had frontage along Highway 123,
Bastrop Road, and Redwood Road. He testified that the land with frontage was considerably more
valuable than the remaining 216.89 acres; it appears from the record that the 4.373 acres condemned
lie largely in the 8.36 acres with road frontage. He valued the 8.36 acres with frontage at $25,000
an acre and the other 216.89 acres at $2,500 an acre. Gholson agreed with the Authority that the
remainder would not be damaged by the condemnation, therefore the only question for the jury was
the value of the land condemned. Gholson opined that Pape's damages were $105,686 - about
$91,000 for the permanent easements over the 4.373 acres, plus about $15,000 to compensate for
the temporary construction easements.

 Gholson testified that in reaching his valuation, he used the "market approach,"
meaning he looked for sales in the area and compared them to the land being taken. He identified
a number of comparable sales, and the Authority objected to Sales 6 and 7. Sale 6 was a 6.5 acre
tract in a subdivision. At the time the sales contract was made, the tract was part of about 90 acres
of raw, undeveloped land, but at the time of the final sale, it had been carved out of the larger acreage
and platted as part of a subdivision. Gholson stated that the buyer and seller agreed on a price for
the tract before it was carved out as a platted lot. Gholson agreed that he had "compared a platted
lot in a recorded subdivision in Hays County to raw acreage belonging to Dr. Pape." Sale 7 was a
7.6 acre tract adjacent to Sale 6 and was offered "as a completed contract of sale of a subdivision." 
It was "a lot- and block-numbered subdivision and a platted lot in a subdivision that's been approved
by the City of San Marcos." The Authority objected to the admission of these sales, relying on State
v. Willey, 360 S.W.2d 524 (Tex. 1962), and arguing it was improper to compare Pape's raw acreage
to platted lots. The trial court sustained the objections and excluded the sales. (3) 

 In Willey, the State sought to condemn 3.221 acres out of a 104 acre tract that was
suitable for subdivision. 360 S.W.2d at 524. Subdivided land in the area sold for up to $4,000 an
acre, while undeveloped land sold for up to $2,165 an acre. Id. at 524-25. The supreme court stated:


It has long been held in this state that even though a tract of land is adaptable to
subdivision for commercial and residential lots one seeking to prove the value of
such a tract of land may not show what the price of the lots would be if subdivided,
or show the price for which already subdivided lots were selling.



Id. at 525. The court concluded that "admission of the testimony as to the sale price of lots in the
subdivided areas undoubtably prejudiced the State's case," and reversed for a new trial. Id. 

 Pape contends the trial court erred in sustaining the Authority's objections because
the sales were unplatted raw acreage when the sales contracts were made and "the actual conveyance
preceded the approval of the subdivision." He also asserts that "[t]he development of rural land has
radically changed since State v. Willey was decided," and argues that "[i]f the trial court's
interpretation of the Willey case is accurate, almost any sale, whether within or without a
municipality, would have to be excluded because each would require compliance with subdivision
regulations including re-platting."

 As an intermediate court, we are bound to follow precedents set by higher courts. 
Penrod Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex. 1993); Lofton v. Texas Brine Corp.,
777 S.W.2d 384, 386 (Tex. 1989); St. Joseph Hosp. v. Wolff, 999 S.W.2d 579, 595-96 n.26 (Tex.
App.--Austin 1999, pet. granted). Therefore, we will follow Willey until the supreme court or the
legislature indicates that it is no longer good law. Further, the rule that land in a subdivision, which
often will have infrastructure either in place or planned, should not be compared to raw, undeveloped
land with no subdivision plans in place, is still valid. See City of Harlingen v. Sharboneau, 44 Tex.
Sup. Ct. 747, 750 (May 17, 2001) ("Texas law recognizes that sales of subdivided lots do not meet
the test of similarity when compared to an undivided tract of land," citing Willey, 360 S.W.2d at
525); Boswell v. Brazos Elec. Power Coop., Inc., 910 S.W.2d 593, 601 (Tex. App.--Fort Worth
1995, writ denied) (generally cannot use evidence of hypothetical, nonexistent subdivision to value
raw acreage); Tenngasco Gas Gathering Co. v. Bates, 645 S.W.2d 496, 498 (Tex. App.--Corpus
Christi 1982, writ ref'd n.r.e.) ("Prices paid for subdivision lots are inadmissible in valuing raw
acreage."); see also State v. Bentley, 752 S.W.2d 602, 607 (Tex. App.--Tyler 1988, no writ) (vacant
tracts in platted subdivision not relevant to value of undeveloped, unplatted land); City of Odessa
v. Meek, 695 S.W.2d 775, 776 (Tex. App.--El Paso 1985, no writ) ("prices paid for improved lots
. . . cannot be used to establish the value of unimproved lots . . . because of lack of similarity.");
Texas Elec. Serv. Co. v. Yater, 494 S.W.2d 271, 275-76 (Tex. Civ. App.--El Paso 1973, writ ref'd
n.r.e.) (error to introduce plat maps drafted after owners learned land was to be condemned when
"[n]othing was done in the way of improvements on the ground."). The trial court did not abuse his
discretion in excluding evidence of Sales 6 and 7.

 Even if we assume it was error to exclude Sales 6 and 7, Pape has not shown that the
exclusion of that evidence was reasonably calculated to cause and probably did cause the rendition
of an improper judgment. See Gee, 765 S.W.2d at 396. Pape has not carried his burden of showing
that the trial court abused its discretion or that the judgment turned on Sales 6 and 7. Alvarado, 897
S.W.2d 753-54. We overrule Pape's third issue. 


Conclusion

 Having overruled Pape's three issues, we affirm the county court at law's judgment.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: June 14, 2001

Publish
1. The Authority argues that Pape waived this issue by failing to raise it before the trial court. 
Pape filed a plea to the jurisdiction, arguing that the cause was improperly assigned to the County
Court at Law No. 1, and at the hearing on the Authority's right to take, he complained that there were
irregularities in the assignment of the case, that the order appointing the commissioners was undated,
and that the order setting the commissioners' hearing was signed before all three commissioners took
their oaths of office. We believe Pape sufficiently raised his complaints before the trial court. 
2. Pape raises his appellate complaints as "issues presented" in the summary section of his
appellant's brief, but raises "points of error" in the argument portions. We will refer to his
complaints as "issues." See Tex. R. App. P. 38.1(e).
3. Aside from the excluded sales, Gholson testified to four other sales: (1) almost 200 acres sold
for $5,000 an acre; (2) about 110 acres sold for $2,903 an acre; (3) almost 100 acres sold for $2,489
an acre; and (4) 2 acres sold for $20,000 an acre. The Authority's expert testified to the following
sales: (1) almost 100 acres sold for $2,491 an acre, including a house; (2) 100 acres sold for $1,800
an acre; (3) about 130 acres sold for $2,512 an acre; (4) about 560 acres sold for $1,850 an acre; (5)
2 acres sold for $20,000 an acre; (6) 1 acre sold for $16,000; (7) 50 acres sold for $11,500 an acre;
and (8) 10 acres sold for $8,000 an acre. The Authority's expert concluded Pape should be
compensated $18,643, which he arrived at by valuing 0.495 acres of the permanent easement at
about $14,000 an acre and the remaining 3.877 acres of the permanent easement at about $2,500 an
acre, and adding $2,700 for damages due to the temporary construction easements. The jury awarded
Pape a total of $34,000.



aw recognizes that sales of subdivided lots do not meet
the test of similarity when compared to an undivided tract of land," citing Willey, 360 S.W.2d at
525); Boswell v. Brazos Elec. Power Coop., Inc., 910 S.W.2d 593, 601 (Tex. App.--Fort Worth
1995, writ denied) (generally cannot use evidence of hypothetical, nonexistent subdivision to value
raw acreage); Tenngasco Gas Gathering Co. v. Bates, 645 S.W.2d 496, 498 (Tex. App.--Corpus
Christi 1982, writ ref'd n.r.e.) ("Prices paid for subdivision lots are inadmissible in valuing raw
acreage."); see also State v. Bentley, 752 S.W.2d 602, 607 (Tex. App.--Tyler 1988, no writ) (vacant
tracts in platted subdivision not relevant to value of undeveloped, unplatted land); City of Odessa
v. Meek, 695 S.W.2d 775, 776 (Tex. App.--El Paso 1985, no writ) ("prices paid for improved lots
. . . cannot be used to establish the value of unimproved lots . . . because of lack of similarity.");
Texas Elec. Serv. Co. v. Yater, 494 S.W.2d 271, 275-76 (Tex. Civ. App.--El Paso 1973, writ ref'd
n.r.e.) (error to introduce plat maps drafted after owners learned land was to be condemned when
"[n]othing was done in the way of improvements on the ground."). The trial court did not abuse his
discretion in excluding evidence of Sales 6 and 7.

 Even if we assume it was error to exclude Sales 6 and 7, Pape has not shown that the
exclusion of that evidence was reasonably calculated to cause and probably did cause the rendition
of an improper judgment. See Gee, 765 S.W.2d at 396. Pape has not carried his burden of showing
that the trial court abused its discretion or that the judgment turned on Sales 6 and 7. Alvarado, 897
S.W.2d 753-54. We overrule Pape's third issue.