*Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004); *Walker v. Packer*, 827 S.W.2d 833, 839–840 (Tex.1992). Accordingly, we **DENY** relator's petition for writ of mandamus. *See* TEX.R.APP. P. 52.8.

**In re WEEKLEY HOMES, L.P., Relator.**

No. 05–08–01249–CV.

Court of Appeals of Texas, Dallas.

Sept. 24, 2008.

Joel Wilson Reese, Winstead PC, Dallas, TX, David Fowler Johnson, Winstead, Sechrest & Minick P.C., Fort Worth, TX, for Relator.

Christopher H. Rentzel, Bracewell & Giuliani LLP, Dallas, TX, for Real Parties in Interest.

Before Justices MORRIS, RICHTER, and MAZZANT.

**MEMORANDUM OPINION**

Opinion by Justice MORRIS.

In this petition for writ of mandamus, relator complains that the trial court erred in granting plaintiff's motion for limited access to relator's computers. Based on the record before us, we conclude relator has not shown the trial court clearly abused its discretion. *In re Prudential*

**WAL–MART STORES TEXAS, LP, Appellant,**

v.

**Anthony CROSBY, Appellee.**

No. 05–08–01107–CV.

Court of Appeals of Texas, Dallas.

July 31, 2009.

Kevin J. Keith, Hiersche, Hayward, Drakely & Urbach, P.C., Addison, TX, for Appellant.

Virgil W. Yanta, Boerne, Kirk L. Pittard, Dallas, TX, for Appellee.

Before Justices FITZGERALD, LANG, and SMITH.[1]

## OPINION

Opinion By Justice FITZGERALD.

Anthony Crosby sued Wal–Mart Stores Texas, LP ("Wal–Mart") seeking to recover damages for personal injuries he sustained in an accident at a Wal–Mart Neighborhood Store. Trial was to the court. The court's judgment decreed that Crosby recover $869,200, plus interest and costs, from Wal–Mart. In seven appellate issues, Wal–Mart challenges the legal and factual sufficiency of the evidence supporting certain findings of the court, the court's failure to exclude an expert witness, and the court's denial of a motion for continuance. We affirm the trial court's judgment.

## BACKGROUND

In June 2004, Crosby was shopping at Wal–Mart during the early morning hours while shelf-stocking was taking place. Crosby was reaching to get soda bottles from a shelf when he was struck by a pallet jack loaded with frozen grape juice, stacked five or six boxes high. The pallet jack was driven by a Wal–Mart employee. The jack hit Crosby between his back and hip, ran over his foot, and pinned him against the soda case. In May 2006, Crosby sued four Wal–Mart entities and the pallet jack driver, asserting general negligence and premises liability.[2]

### Expert Discovery Issues

Issues involving the designation of Crosby's medical expert witness, Dr. James Laughlin, play a key role in this appeal. Crosby disclosed Laughlin's name, address, and phone number in August 2006, shortly after he filed suit. Laughlin was one of eight health care providers identified in these original disclosures as non-retained experts. Crosby did not disclose the subject matter on which any of the providers would testify. *See* Tex.R. Civ. P. 194.2 (contents of request for disclosure including, for testifying expert, "the sub-

1. The Honorable Bea Ann Smith, Justice, Court of Appeals, Third District of Texas at Austin, Retired, sitting by assignment.

2. The Wal–Mart defendants were Wal–Mart Neighborhood Market Store, Wal–Mart Stores Texas, LP, Wal–Mart Super Center, and Wal–Mart. The trial court's judgment speaks only to Wal–Mart Stores Texas, LP. The court's findings explain, "Counsel for Defendants acknowledged that Wal–Mart Stores Texas LP is the properly named Defendant and that the other names are merely trade names for the Defendant." Only Wal–Mart Stores Texas LP ("Wal–Mart") is a party to this appeal.

ject matter on which the expert will testify").

Wal–Mart obtained Crosby's medical records from Dr. Laughlin in September 2007, through a deposition on written questions. Crosby did not obtain medical records independently; instead he relied on Wal–Mart's obtaining the records and then providing him with access to them. On April 30, 2008, six days before the May 6 trial setting, Wal–Mart produced Laughlin's records (and all other medical records it had procured through depositions on written questions) to Crosby. Crosby then made the records available to Laughlin for his review.

On May 1, 2008, now five days before the May 6 trial setting, Crosby supplemented his disclosure concerning Laughlin by attaching a December 21, 2004 narrative report from Laughlin identifying future treatment options for Crosby.[3] That same day, the parties moved for an agreed continuance of the trial setting, but the trial court denied the motion. And, the same day, counsel for Wal–Mart wrote a letter to counsel for Crosby reflecting the parties' agreement—apparently with the court's encouragement—to schedule and take Laughlin's deposition before trial. Laughlin's deposition was taken on May 5, 2008.

On May 6, 2008, Wal–Mart filed its Motion to Strike Dr. James Laughlin. The motion sought to exclude Laughlin from giving any testimony at trial because of his untimely designation. Trial began on May 6, and live testimony was completed the next day. At that point, the trial court instructed counsel to appear on May 12 for a hearing on the Laughlin deposition:

> So then I will see y'all four o'clock Monday. And if you will have your excerpts,

deposition excerpts and objections to the other side, and we will—we will have it on the record and have a discussion then as to what of Laughlin's testimony will come in.

On the morning of May 12, 2008, Crosby's attorney faxed a second supplemental disclosure to opposing counsel. For the first time, this disclosure responded to the request for the subject matter on which the expert will testify, stating:

> As already disclosed to Defendants generally, Plaintiff's back injury, his need for and costs of surgery, and how this injury's effects can be distinguished from those of prior injuries.

The same day, Wal–Mart filed its Motion to Strike Plaintiff's Supplemental Amended Disclosures and Expert Designation, arguing this disclosure a week after trial began caused "surprise, prejudice and injustice to Defendants." Later in the afternoon of May 12, the trial court heard and ruled on the objections posed by Wal–Mart to Laughlin's testimony.

### Evidence at Trial

At trial, Crosby testified concerning the pallet jack incident. He described how the vehicle was driven up against him without warning and how the driver subsequently apologized, saying he had never driven it before, but the manager directed him to do so. Crosby and his wife, Demetris Johnson, testified to Crosby's injuries that followed upon the incident. They testified Crosby was unable to stand or walk without assistance after the incident and that he experienced physical symptoms including debilitating pain, loss of control over urination, and excessive weight gain. Crosby offered his medical records show-

---

**3.** Crosby also supplemented his damages calculation and his list of health care providers. But throughout this opinion we will focus on the testimony of Dr. Laughlin because it forms the basis of Wal–Mart's appellate issues.

ing treatment for his injuries. The couple also testified to the manner in which Crosby's everyday life changed after the accident because of the physical limitations he experienced.

Through its questioning of these witnesses, Wal–Mart challenged whether the pallet jack incident was the true cause of Crosby's injuries. Wal–Mart stressed the fact that Crosby experienced a work-related back injury in 1985, which had rendered him unable to work for a long period of time. Moreover, Crosby had re-injured his back in a 1998 motor vehicle accident when he was hit from behind. Wal–Mart pointed to hospital visits years after these incidents where Crosby continued to complain of back pain and where he stated he was unemployed or disabled.

Crosby explained he had recovered from the earlier injuries after time and treatment; the subsequent emergency room visits were related to an acute basketball injury rather than a chronic back problem. He also explained he had no medical insurance, and so sometimes he told providers he was unemployed or disabled in order to receive treatment he could not otherwise afford.

Wal–Mart offered the testimony of Charlotte Lofton, who was manager of the Wal–Mart store at the time of Crosby's injury and at the time of trial. Lofton took the report of Crosby's injury from Johnson, and she was responsible for Wal–Mart's investigation of the incident. Lofton testified she spoke to all the individuals identified in Johnson's report, as well as all the other managers. None of them was aware of the accident. There were no videos of the incident; no store camera was directed at the area where the incident took place. Lofton reported that the pallet jack driver had since been fired for attendance problems, and the manager on duty that night had been "transferred for promotion."

As was discussed above, when this testimony was completed, the trial court heard and ruled on objections to Laughlin's testimony. Testimony not stricken was admitted for the trial court's consideration.

## Judgment and Appeal

On May 19, 2008, the trial court signed a judgment in favor of Crosby. The judgment called for him to recover $869,200 in damages, $400,000 in pre-judgment interest, and post-judgment interest plus costs. At Wal–Mart's request, the trial court issued findings of fact and conclusions of law supporting the judgment. Wal–Mart appeals.

### SUFFICIENCY OF THE EVIDENCE

■ We review the sufficiency of the evidence to support findings of fact under the same standards for reviewing evidence to support a jury's verdict. *Walker v. Cotter Prop., Inc.*, 181 S.W.3d 895, 899 (Tex.App.-Dallas 2006, no pet.). In a legal sufficiency review, we ask whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 414 (Tex.App.-Dallas 2006, pet. denied). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Walker*, 181 S.W.3d at 899. When we review a finding for factual sufficiency, we consider all of the evidence and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Edwards v. Mid–Continent Office Distrib., L.P.*, 252 S.W.3d 833, 836 (Tex.App.-Dallas 2008, pet. denied).

## Causation

■ In its first issue, Wal–Mart argues the evidence was legally and factually insufficient to support the trial court's causation findings. The trial court found:

- the pallet jack operator breached the duty to use reasonable care when operating the jack, and that breach proximately caused injuries to Crosby;

- the Wal–Mart manager on duty at the time of the incident breached the duty to use reasonable care when entrusting the operation of pallet jacks to employees who are competent to operate the jacks, and that breach proximately caused injuries to Crosby;

- there was no negligence by Crosby that proximately caused his injuries; and

- to the extent Crosby had pre-existing injuries to his back, they were "largely ameliorated" by treatments Crosby received before the incident at Wal–Mart, and any pre-existing injuries were aggravated by the incident at Wal–Mart.

The causation argument in this case has two steps: first legal, and then procedural. Wal–Mart's legal argument is that—because of Crosby's earlier injuries to his back—only expert medical testimony could prove a causal connection between his current injuries and the pallet jack incident. Crosby argues the incident was sufficiently uncomplicated in this case that non-expert evidence suffices to prove causation. Both parties look to the supreme court's opinion in *Guevara v. Ferrer*, 247 S.W.3d 662 (Tex. 2007), where the court sets forth standards for when expert evidence is necessary to prove causation in a personal injury case and when non-expert evidence will suffice.

Building on its legal argument, Wal–Mart contends Crosby lacks the necessary medical expert testimony because all of Laughlin's deposition testimony concerning causation and aggravation of injuries was stricken by the trial court. Crosby identifies opinions supporting the trial court's findings that were not specifically stricken by the trial court, but Wal–Mart argues those opinions were indeed stricken by the court's "general ruling" on the admissibility of Laughlin's testimony.

We need not decide whether non-expert evidence will suffice to prove causation in this case, because expert testimony in the record before us supports the trial court's findings on causation. In unstricken testimony, Laughlin states his opinion:

> I feel that the injury of 13 June of '04 extended the ruptured disc that the patient previously had and made it much larger, and that the symptoms that I saw the patient for were due to that enlargement of the disc.

And when asked whether he had an opinion whether the symptoms he saw and reviewed in medical records resulted from the June 13th incident or were aggravated by that incident, Laughlin replied:

> I believe that the patient—the problems that the patient had when I saw him on [sic] 6/13/04 were definitely an aggravation of a preexisting injury because of the extension, the significant extension of this disc material.

Thus, expert medical evidence supports the trial court's findings that the Wal–Mart incident caused injuries to Crosby.

Wal–Mart concedes it did not object to these causation opinions, but it argues the trial court's "general ruling" sufficed to exclude these opinions. Wal–Mart did not obtain an order granting (or denying) either its Motion to Strike Dr. James Laughlin or its Motion to Strike Plaintiff's Supplemental Amended Disclosures and Expert Designation. Instead, the trial court told the parties to bring their objections to Laughlin's deposition testimony to

the hearing on May 12. At the beginning of that hearing, the trial court did make two preliminary rulings concerning the supplemental designations of Laughlin. First, the court ruled that providing the doctor's name, address, telephone number, and medical records was sufficient designation insofar as the doctor intended to testify concerning the contents of his medical records. Second, the court ruled that—to the extent the doctor testified to matters outside his medical records—Crosby would need to show good cause and no surprise or prejudice.

The court then heard Wal–Mart's objections. The objections were not resolved in one broad sweep. Instead, they were resolved carefully by the court, one by one, in a hearing that required a forty-four-page transcript. These specific rulings to specific objections are the rulings of the trial court. If Wal–Mart's objections to the deposition had been resolved by the preliminary rulings alone, we would have to conclude the trial court conducted a lengthy, useless hearing.

We conclude expert medical evidence underlies the trial court's causation findings in this case. That expert evidence is legally sufficient to support the trial court's judgment, whether it was necessary in this case or not. *See Walker,* 181 S.W.3d at 899.

As to our factual sufficiency inquiry, Wal–Mart elicited evidence that could tend to discredit the causal link between Crosby's current injuries and the Wal–Mart incident. Crosby has a lengthy history of injury and pain. He suffered two earlier debilitating injuries to his back, he was not always truthful in reporting his history, and he did not seek medical treatment immediately after the June 13 incident. However, Crosby testified he was well and pain-free before the incident. The trial judge made a credibility determination in favor of Crosby. Nothing in the record causes us to believe the court's findings were so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Edwards,* 252 S.W.3d at 836.

Sufficient evidence supports the trial court's causation findings. We overrule Wal–Mart's first issue.

### Damage Awards

In its third through sixth issues, Wal–Mart challenges the sufficiency of the evidence to support the trial court's finding concerning damages awards. The specific finding at issue states:

> The following sums of money, if paid now in cash, would fairly and reasonably compensate Crosby for his injuries that were proximately caused by the herein-referenced negligence of [the pallet jack driver] and [his supervising manager]:

| | |
|---|---|
| a. Pain & Suffering sustained in the past: | $200,000.00 |
| b. Mental Anguish sustained in the past: | $100,000.00 |
| c. Physical Impairment sustained in the past: | $100, 00.00 |
| d. Pain & Suffering, that in all reasonable probability, will be sustained in the future: | $200,000.00 |
| e. Mental Anguish, that in all reasonable probability, will be sustained in the future: | $100,000.00 |
| f. Physical Impairment, that in all reasonable probability, will be sustained in the future: | $100,000.00 |
| g. Medical Expenses, that in all reasonable probability, will be sustained in the future: | $ 69,200.00 |
| TOTAL: | $869,200.00 |

At the outset, Wal–Mart challenges each category of damages awarded on the ground Crosby failed to prove his injuries were caused by the Wal–Mart incident. We have already concluded there is ample evidence supporting the judge's finding that the negligence of the Wal–Mart employees aggravated Crosby's earlier injuries and caused him injuries.

 Next, in the categories of pain and suffering, mental anguish, and physi-

cal impairment, Wal–Mart contends that none of Crosby's damages extend past the levels he was already experiencing as a result of his earlier injuries. All of the evidence is to the contrary.

- As to pain and suffering, Crosby testified he was pain-free at the time of the Wal–Mart incident, but he experienced continuous pain at the time of trial, years after the incident. Moreover, Laughlin testified Crosby would likely never be free of the pain he suffered.

- As to his physical impairment, the evidence shows Crosby drove to the store on June 13, 2004 and walked into the store under his own power to do his family's shopping. Following the incident he cannot drive or even walk or stand alone for any period of time. He requires assistance to bathe, to get dressed and to use the toilet. He must use a cart for handicapped persons when he goes out with his family. He cannot engage in the kind of sports and physical activities he did before the incident, either by himself or with his children.

- And as to mental anguish, Crosby and Johnson both described Crosby's shame and humiliation over being unable to perform the simplest personal hygiene tasks for himself. Crosby testified to the distress he feels over being unable to work and to provide for his children as he used to do. And his testimony shows the frustration he feels at not being able to teach his children and participate with them in activities a father traditionally shares with his children. At one point, Crosby spoke about feeling like "less than a man," because instead of taking care of himself and his family, he now needed others to take care of him.

Wal–Mart offered no evidence to the contrary on any of these categories of damages. This Court is not a fact finder, and we will not pass upon Crosby's (or Johnson's) credibility or substitute our judgment for that of the trial court. *Mayhew v. Dealey*, 143 S.W.3d 356, 367–68 (Tex. App.-Dallas 2004, pet. denied). We conclude sufficient evidence supports the trial court findings on each these categories.

■ Wal–Mart argues the trial court's award for future medical expenses is based on "a speculative possibility" that Crosby would undergo back surgery in the future. To recover future medical expenses, a plaintiff must show the amount of the expenses and show there is a reasonable probability such expenses will actually be incurred in the future. *Sanmina–SCI Corp. v. Ogburn*, 153 S.W.3d 639, 642 (Tex.App.-Dallas 2004, pet. denied). The determination of what amount, if any, to award in future medical expenses falls within the fact finder's sound discretion. *Id.* An award of future damages in a personal injury case is always speculative because issues such as life expectancy, medical advances, and the future costs of products and services are, by their very nature, uncertain. *Pipgras v. Hart*, 832 S.W.2d 360, 365 (Tex.App.-Fort Worth 1992, writ denied). Given this uncertainty, appellate courts are particularly reluctant to disturb a fact finder's award of these damages. *See Ogburn*, 153 S.W.3d at 642.

Laughlin testified that a surgery called a laminectomy would be Crosby's only choice for relief from at least some of the symptoms he developed after the June 13, 2004 incident. Laughlin acknowledged that because of Crosby's weight, he would need approval from a number of physicians before the operation could be performed, but Laughlin insisted Crosby was a candidate for the surgery. And Crosby testified that he would do anything he could, "[w]hatever it takes," to fix his back. Laughlin's

estimate of the cost of the laminectomy was $69,200, the same amount the trial court awarded for future medical bills. We conclude Crosby met his burden to show a reasonable probability that he would incur the expenses of back surgery in the future as well as the cost of that surgery. *See id.*

Sufficient evidence supports each of the damages awards made by the trial court. We overrule Wal–Mart's third through sixth issues.

### ADMISSIBILITY OF MEDICAL EXPERT TESTIMONY

■ In its second issue, Wal–Mart argues the trial court erred in failing to exclude Laughlin's testimony in its entirety. According to Wal–Mart, Crosby's designation of Laughlin was incomplete and untimely, and none of his testimony should be considered in support of any of the trial court's findings of fact. Wal–Mart raised these objections to Laughlin's testimony in its Motion to Strike Dr. James Laughlin and its attempt to strike Crosby's May 2008 amended disclosures. Wal–Mart did not obtain one order granting or denying any of these motions. Instead, as we discussed above, the trial court addressed Wal–Mart's specific objections to Laughlin's testimony at a single hearing, on the record, after the live testimony at trial was completed.

■ The decision to admit or exclude evidence rests within the discretion of the trial court. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995). Such a determination will not be overturned absent an abuse of discretion. *Id.* In this case, Laughlin did not appear and give live testimony at trial: his medical records were admitted and excerpts from his deposition were admitted.

The medical records were offered during trial (during a break in Johnson's testimo-

ny) when the parties offered all the medical records each was relying upon. Wal–Mart's counsel responded, "No objection" when the records were offered. As to the deposition testimony, the trial court instructed the parties to bring their objections to Laughlin's testimony to the hearing for that purpose. At that hearing the trial court granted a number of Wal–Mart's objections. Indeed, it is Wal–Mart's position in this appeal that the trial court granted every objection it raised based on untimely designation. We see no abuse of discretion in admitting evidence, even if untimely supplemented, that was not objected to at trial or at the hearing called specifically for the purpose of limiting the particular witness's testimony.

Wal–Mart argues Crosby failed to show good cause or lack of surprise on Wal–Mart's part so as to justify his late supplementation. The trial court did not make findings on this subject on the record, but the court could have relied upon the production of medical records by Wal–Mart less than a week before the trial setting. It could also have relied on Wal–Mart's representation in the joint continuance motion that *both* parties were still conducting discovery in the days before trial and would not be able to finish before the trial setting. Wal–Mart argues it had no opportunity to evaluate Laughlin's opinions and, if necessary, to obtain an expert to counter those opinions. However, following the hearing on Laughlin's testimony, Wal–Mart did not re-urge a continuance motion or otherwise raise with the trial court the need for a countering expert witness. The record before us does not support a finding of abuse of discretion on this ground either.

■ Finally, Wal–Mart argues that allowing the untimely supplementation of Laughlin's opinions violated the trial

court's own scheduling order. The trial court has the inherent power to modify its own order. *See In re Estate of Henry,* 250 S.W.3d 518, 527 (Tex.App.-Dallas 2008, no pet.).

We overrule Wal–Mart's second issue.

### CONTINUANCE

■■■■ In its seventh issue, Wal–Mart contends the trial court erred by denying the parties Second Agreed Motion for Continuance and thereby "forcing [Wal–Mart] to trial unprepared." The parties filed the continuance motion on May 1, 2008, before the May 6 trial setting. We review the denial of a motion for continuance for an abuse of discretion. *General Motors v. Gayle,* 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding).

Wal–Mart argues there were valid reasons for the agreed continuance. Crosby responds initially that the motion failed for want of a verification. However, because the motion was made "by consent of the parties," the motion did not need to be verified. *See* TEX.R. CIV. P. 251 (cause for continuance must be "supported by affidavit, or by consent of the parties, or by operation of law").

■■■ The motion for continuance stated:

> The parties are working towards completion of discovery in this case, but the comprehensive discovery necessary in order to place it in a trial posture cannot be accomplished prior to its current trial setting.

The motion gave several reasons why discovery had not been completed, but nowhere stated the specific discovery that remained to be done. If a continuance is sought in order to pursue further discovery, the motion must describe the evidence sought, explain its materiality, and show the party requesting the continuance has used due diligence to obtain the evidence. *Pape v. Guadalupe–Blanco River Auth.,* 48 S.W.3d 908, 914 (Tex.App.-Austin 2001, pet. denied) (citing TEX.R. CIV. P. 252). A trial court does not abuse its discretion by denying a motion for continuance that does not meet the requirements of rule 252. *Id.*

The parties' continuance motion in this case did not set forth the evidence sought by further discovery, its materiality, or that the parties had used due diligence to obtain it. We find no abuse of discretion in the denial of that motion. We overrule Wal–Mart's seventh issue.

### CONCLUSION

We have decided each of Wal–Mart's issues against it. Accordingly, we affirm the trial court's judgment.