

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00308-CV

## IN THE INTEREST OF M.H., S.H., AND G.H., CHILDREN

**From the County Court at Law
Ellis County, Texas
Trial Court No. 73,951 CCL**

## O P I N I O N

The mother and the maternal grandparents of the children the subject of this suit bring this appeal from a decree terminating the mother's parental rights, designating the father of S.H. as her managing conservator, and designating the Department of Family and Protective Services as the managing conservator of the other two children. The grandparents contend that the court erred by: (1) failing to exclude the testimony of the Department's expert witnesses for failure to properly designate the experts and disclose their mental impressions and opinions before trial in response to a request for disclosure; and (2) denying their motion for new trial because there is no evidence to support the jury's refusal to find that the grandparents' appointment as joint managing

conservators is in the best interest of the children and these adverse findings are against the great weight and preponderance of the evidence (three issues).[1]  The mother contends that: (1) the evidence is factually insufficient to support the jury's finding that termination of the parent-child relationship is in the best interest of the children; and (2) the court abused its discretion by denying her no-evidence motion for summary judgment.  In a third issue, the mother adopts by reference the grandparents' issues.  *See* TEX. R. APP. P. 9.7.  We will affirm the judgment.

## Background

The children were born in two other states.  S.H.'s father is Appellee "Jack"[2] who still resides in the state of S.H.'s birth.  The other children's father voluntarily relinquished his parental rights.  The mother is Appellant "Sandra," and her parents are Appellants "Bradley" and "Paula."  Bradley and Paula moved to Texas in 2003.  Sandra moved with the children to Texas in 2004.

The Department became involved in 2006 amid concerns that the children were at risk because Sandra suffered from what was thought to be Munchausen Syndrome by Proxy.  In March 2007, the children were removed from the home.  S.H. and G.H.

---

[1]  The grandparents contend in their second issue that there is no evidence to support the challenged findings.  They contend in their third issue that there is not factually sufficient evidence to support the findings.  And they contend in their fourth issue that the challenged findings are against the great weight and preponderance of the evidence.  Because they had the burden of proof at trial on this issue, they must establish that the challenged findings are against the great weight and preponderance of the evidence to prevail on a factual insufficiency claim.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Hunter v. Ford Motor Co.*, 305 S.W.3d 202, 206 (Tex. App.—Waco 2009, no pet.).

[2]  To protect the identity of the children, we shall refer to the parents and grandparents by pseudonyms.  *See* TEX. FAM. CODE ANN. § 109.002(d) (Vernon 2008); TEX. R. APP. P. 9.8(b)(1).

were placed in foster care, and M.H. was placed with Bradley and Paula. After extensive discovery and the usual services afforded to families by the Department, the case proceeded to a jury trial in June 2008. Following several weeks of testimony, the jury returned its verdict.

**Disclosure of Expert Opinions[3]**

Bradley and Paula contend in their first issue (and Sandra contends as part of her third issue) that the court erred by failing to exclude the testimony of eight of the Department's[4] expert witnesses for failure to properly designate the experts and disclose their mental impressions and opinions before trial in response to a request for disclosure. There are three components to this appellate complaint: (1) whether the experts are retained or non-retained; (2) whether the Department disclosed the mental impressions and opinions of the experts; and (3) if not, whether Appellants were unfairly surprised or prejudiced by the failure to disclose this information.

Bradley and Paula served the Department with a request for disclosure under Rule of Civil Procedure 194. *See* TEX. R. CIV. P. 194. Sandra filed a "written trial

---

[3] Generally, when a party presents multiple issues, an appellate court should first address the issue(s) that would afford the party the greatest relief (like a no-evidence issue which could lead to rendition of judgment by the appellate court). *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam); *see Builders Transp., Inc. v. Grice-Smith*, 167 S.W.3d 1, 6 n.2 (Tex. App.—Waco 2005, pet. denied); *In re K.W.*, 138 S.W.3d 420, 428 (Tex. App.—Fort Worth 2004, pet. denied). Here, however, because of the intertwined nature of the issues relating to termination of the parent-child relationship and post-termination conservatorship, we first address the issues relevant to termination and then those relevant to conservatorship.

[4] Although this complaint actually refers to experts of the Department "and the Children," we refer to these experts collectively as the Department's experts because no information in the record indicates that a distinction should be noted for purposes of our analysis.

objection" to the admission of expert testimony on the ground that the Department failed to disclose the mental impressions or opinions of its experts. *Id.* 194.2(f)(3).

The court conducted a hearing on Sandra's written objection before opening statements. Bradley and Paula joined in Sandra's objection.[5] After hearing argument of counsel, the court advised the parties that it would defer a ruling until the following day. The next day the court signed and entered an order overruling the objection and finding that permitting the experts to testify would not cause unfair surprise or prejudice "as the discovery responses themselves (documents, medical records, reports, etc.), and the available testimony of many of the individual non-retained experts" provided adequate notice "of the non-retained experts' impressions." In response to this ruling, the objection was re-urged, and the court granted a running objection with respect to each expert.

*Preservation*

Jack argues that Appellants failed to preserve this issue for appellate review because their "broad general objection" was not sufficiently specific. We disagree. The basis of the objection was that the discovery responses with respect to the experts failed to adequately disclose "the general substance of [each] expert's mental impressions and opinions and a brief summary of the basis for them." *See* TEX. R. CIV. P. 194.2(f)(3). The court's written order essentially overruled this objection for two reasons: (1) the Department's discovery responses provided the requisite information regarding the

---

[5]     *See Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 556 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998) (in trials involving multiple defendants, each defendant must make his own objections to preserve error, but defendants may agree with court's approval that the objection of one defendant may be considered as having been made on behalf of all defendants).

experts' mental impressions and opinions even if the specific response to the request for disclosure did not; and (2) Appellants would not be unfairly surprised or prejudiced by permitting the experts to testify.

Appellants presented a specific objection. The trial court's written order demonstrates that the court (1) understood the basis for the objection and (2) clearly overruled the objection. In addition, the trial court granted a running objection as to the testimony of each expert witness for the reasons specified in the written objection. Thus, we hold that Appellants adequately preserved this issue. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004).

*Waiver*

Jack contends that Appellants waived their complaint because they did not request a continuance. He cites *Wal-Mart Stores Texas, LP v. Crosby*, 295 S.W.3d 346 (Tex. App.—Dallas 2009, pet. denied), to support this contention. However, we find that case distinguishable for several reasons.

The Dallas Court's discussion regarding Wal-Mart's failure to request a continuance was an alternate ground for disposing of Wal-Mart's multi-faceted appellate complaint. *See id.* at 355. The court's primary holding was that Wal-Mart could not complain on appeal regarding the admission of those portions of the complained-of evidence (medical records and testimony) to which it did not object. *Id.* Specifically concerning the issue of surprise, the appellate court observed that the trial court did not make any express rulings on this issue. Then the appellate court recited a litany of reasons the trial court could have concluded that Wal-Mart was not unfairly

surprised by the plaintiff's late supplementation of discovery. *Id.* Finally, in response to Wal-Mart's complaint that it "had no opportunity to evaluate [the expert's] opinions and, if necessary, to obtain an expert to counter those opinions," the appellate court observed that, after the trial court ruled on Wal-Mart's objections and indicated that some of the expert's testimony would be admitted, "Wal-Mart did not re-urge a continuance motion or otherwise raise with the trial court the need for a countering expert witness."

We decline to apply *Wal-Mart* to the facts of this case. As explained, the continuance discussion was an alternate ground for overruling Wal-Mart's multi-faceted complaint. In addition, the parties in *Wal-Mart* did not have to concern themselves with the statutory dismissal deadline established by section 263.401 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.401 (Vernon 2008). Accordingly, we hold that Appellants did not waive their complaint by failing to request a continuance after the court overruled their objection.

*Retained Expert*

Rule 194.2(f)(3) requires, on proper request, a party to disclose for any testifying expert "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information." TEX. R. CIV. P. 194.2(f)(3). The rule draws distinctions between the disclosure requirements for retained experts and those for non-retained experts. *See In*

*re Reaud*, 286 S.W.3d 574, 579 n.3 (Tex. App.—Beaumont 2009, orig. proceeding) (per curiam).

Appellants challenge the admission of the testimony of eight experts but contend that only one, Dr. Matthew Cox, was a retained expert. The trial court implicitly found that Cox was a non-retained expert because the court referred to all of the Department's experts in its written ruling on Appellants' objection as "non-retained experts."

Our research has not disclosed a rule, statute or case explicitly defining who a "retained expert" is. But the Rules of Civil Procedure appear to view the term rather broadly because the rules treat similarly any expert "retained by, employed by, or otherwise subject to the control of [a party]." *See* TEX. R. CIV. P. 194.2(f), 195.3, 195.6.

Dr. Cox testified that he is an employee of the State of Texas, serving as an assistant professor and pediatrician at the University of Texas Southwestern Medical School and Children's Medical Center in Dallas. He explained that the State has provided funding to create "centers of consultation for Child Protective Services" at the four medical schools operated by the University of Texas to furnish experts to CPS for "evaluating kids when there's concerns of abuse or neglect." On cross-examination, he explained that part of his duties through this program are "to provide medical expertise and court appearances as needed for [the Department]." "I'm not getting any individual pay [for testifying]. This is part of my salary at Children's reviewing these records and coming to court, part of my job that's partially funded by the state."

Though Cox may not be a "retained expert" in the traditional sense, we conclude from his testimony that he is a retained expert for purposes of the discovery rules

because he is "employed by [and] otherwise subject to the control of" the State on behalf of the Department. *See id.* 194.2(f). The trial court abused its discretion to the extent it held otherwise.

*Disclosure of Mental Impressions and Opinions*

Because Cox was a retained expert, Rule 194.2(f)(3) required the Department to disclose "the general substance of [Cox]'s mental impressions and opinions and a brief summary of the basis for them." *Id.* 194.2(f)(3). For the non-retained experts, the Rule required the Department to disclose "the general substance of [their] mental impressions and opinions and [documents reflecting] a brief summary of the basis for them." *Id.*; *Barr v. AAA Tex., LLC*, 167 S.W.3d 32, 36-37 (Tex. App.—Waco 2005, no pet.).

In an attempt to satisfy these requirements,[6] the Department in its amended response to the request for disclosure stated that these experts:

> may have knowledge of relevant facts concerning the subject matter of the above-referenced litigation, and/or any matter relating to the healthcare services provided to the Children, Respondent [Sandra], and/or Intervenors. Some are healthcare doctors, providers, therapists, developmental psychologists or clinical psychologists, who have provided healthcare services to the Children and/or to the Respondents and/or Intervenors, or they have testified concerning matters relating to the Children, [Sandra], and/or the Intervenors.

This statement does not in any manner identify or disclose: (1) "the general substance of the expert's mental impressions and opinions"; (2) "a brief summary of the basis for them" (with regard to Cox); or (3) documents reflecting such a summary with regard to the non-retained experts. *See Llanes v. Davila*, 133 S.W.3d 635, 638-39 (Tex.

---

[6] The Department's Amended Responses to Intervenor's Request for Disclosure is 18 pages long and tracks the relevant language of Rule 194.2. The quoted portion appears on page 15 of the amended response directly after a reference to and quotation of subdivision (f)(3) of the rule.

App.—Corpus Christi 2003, pet. denied). Thus, these experts should not have been permitted to testify unless, as the trial court found, permitting them to testify did not cause unfair surprise or prejudice.

### *Unfair Surprise or Prejudice*

The Department had the "burden of establishing . . . the lack of unfair surprise or unfair prejudice." TEX. R. CIV. P. 193.6(b). The trial court had the discretion to determine whether the Department satisfied its burden, but the court's finding must be supported by the record. *Tex. Mun. League Intergov'tal Risk Pool v. Burns*, 209 S.W.3d 806, 817 (Tex. App.—Fort Worth 2006, no pet.) (citing *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992); TEX. R. CIV. P. 193.6(b)).

The Department characterizes this issue as a failure to supplement previous disclosures, but the issue presented by Appellants is whether the Department wholly failed to disclose the required information.[7] Thus, we do not address the Department's contention that supplementation was unnecessary because the experts' trial testimony reflected only a refinement of an already disclosed subject. *See Exxon Corp. v. W. Tex. Gathering Co.*, 868 S.W.2d 299, 304 (Tex. 1993); *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 902 (Tex. App.—Texarkana 2004, pet. denied). Nevertheless, the issue of whether Appellants were on notice regarding the mental impressions and opinions of the experts is relevant to whether they suffered unfair surprise or prejudice. *See Hoefker v.*

---

[7] It is noteworthy that the Department does not cite to any previous discovery response in the record which would have given Appellants the information they contend was never disclosed.

*Elgohary*, 248 S.W.3d 326, 331 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Burns*, 209 S.W.3d at 817-18.

Dr. Matthew Cox

Appellants contend they were unfairly surprised or prejudiced because Dr. Cox's opinions changed between the 14-day adversary hearing conducted in April 2007 and the trial held in June 2008. At the 14-day hearing, the Department initially asked Cox to differentiate Falsification Syndrome and Factitious Disorder. Sandra objected that Cox was not qualified as an expert in mental health. The court noted that Cox was qualified without objection to testify as a pediatric forensic specialist. The court asked Cox whether, as a pediatric forensic specialist, he had the training and experience and whether it was part of his "regular protocol" to make such a differentiation. Cox answered:

> As a child abuse expert, the spectrum of disorder of Munchausen Syndrome by proxy is the diagnosis in the child of pediatric condition falsification and a parental diagnosis of a mental illness, Factitious Disorder by proxy, so those two have interplays.
>
> My role is the diagnosis of the falsification of the children's symptom, but they work together.

The court overruled Sandra's objection after Cox testified that it was part of his "regular course of conduct or protocol to distinguish the two."

Cox testified in the 14-day hearing that he had reviewed S.H.'s and G.H.'s medical records[8] and had found numerous examples where Sandra had misreported or

---

[8]     A transcription of Dr. Cox's testimony from the 14-day hearing was filed 2 weeks before trial and made available to the other parties for copying. Cox testified at trial that he did not have M.H.'s medical records at the time of the 14-day hearing,

falsified their medical history or their symptoms. He opined at this hearing that both children had suffered "abuse by pediatric condition falsification."

At trial, Cox provided similar testimony regarding Sandra's misreporting and/or falsification of S.H.'s and G.H.'s medical history or symptoms. Over objection, he defined Munchausen Syndrome by proxy, but he never opined that Sandra suffered from this condition. He concluded that S.H. and G.H. both were abused because of "pediatric condition falsification." With respect to M.H., he testified that "there was a history" which led to ("in retrospect") unnecessary diagnostic tests. He did not unequivocally testify that M.H. was abused by pediatric condition falsification.

At trial, Dr. Cox testified, consistently with his testimony at the 14-day hearing, that S.H. and G.H. suffered abuse by "pediatric condition falsification." He expressed similar concerns at trial with regard to M.H. but did not opine that she suffered abuse in this manner. He reviewed additional records (including all of M.H.'s available records) between the 14-day hearing and trial, but his expert opinion remained consistent. Accordingly, we cannot say that the court abused its discretion by concluding that Appellants were not unfairly surprised or prejudiced by the Department's failure to disclose his mental impressions or opinions. *See Hoefker*, 248 S.W.3d at 331; *Burns*, 209 S.W.3d at 817-18.

### Dr. Muhammad Qamar

The Department did not list Dr. Qamar as a testifying expert in its response to the request for disclosure, but it did include him in an attached list of expert witnesses which included more than 250 other healthcare providers. Qamar did not testify at the

14-day hearing. Qamar was asked to evaluate Sandra in August 2007 by physicians at John Peter Smith Hospital for suspicion of factitious disorder. Based on his evaluation, Qamar concluded that she has factitious disorder. On cross-examination, he opined more forcefully that she "100 percent meets the criteria." Qamar testified that Sandra's prognosis with regard to this condition is good so long as she has family support, personal motivation, and appropriate counseling services.

Assuming without deciding Appellants were unfairly surprised or prejudiced by the admission of Qamar's testimony, his opinion was admitted elsewhere without objection when his written consultation report was admitted in evidence. Therefore, any error in the admission of his testimony was rendered harmless by the admission of the same evidence in written form without objection. *See Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 885 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Combs v. Gent*, 181 S.W.3d 378, 385 (Tex. App.—Dallas 2005, no pet.).

### Dr. Christian Sanchez

Dr. Sanchez testified concerning Sandra's return to the Ennis Regional Medical Center in April 2008, several weeks after having surgery there to remove a staple from her knee. During her stay, nurses discovered that she had broken the lock on the PCA pump, which administered morphine for pain relief, and manipulated her dosage. Sanchez confronted Sandra about what he perceived to be a "definitely psychological, if not physical, addiction to pain medicine."

In reviewing her history regarding the staple lodged in her knee, Sanchez testified that Sandra's version of how the injury occurred was not entirely consistent

with her injury. He explained this is a matter of concern when patients exaggerate symptoms or "inflict things upon themselves" to get medical attention or certain drugs. Based on his observations, he diagnosed her as suffering from Munchausen's.

Assuming without deciding Appellants were unfairly surprised or prejudiced by the admission of Sanchez's testimony, his opinion was admitted elsewhere without objection when his handwritten notes were admitted in evidence as part of Sandra's medical records from Ennis Regional Medical Center. Therefore, any error in the admission of his testimony was rendered harmless by the admission of the same evidence in written form without objection. *Id.*

### Other Physicians

Appellants also complain about the Department's failure to disclose the mental impressions or opinions of Doctors Karen Schultz, Lorie Belitere-Blessing, Amy Haller, and Kimberly Sweet. However, Appellants present no argument or authority specific to the testimony of these doctors. We will not make their argument for them. *See Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.); *Beard v. Beard*, 49 S.W.3d 40, 67 (Tex. App.—Waco 2001, pet. denied).

### Dr. Mitchell Dunn

Dr. Dunn's opinion did change between the time of the 14-day hearing and trial. He testified as a psychiatric expert on Sandra's behalf at the 14-day hearing and diagnosed her with a depressive personality disorder. In his opinion at that time, she was able to perform normal life functions and provide appropriate care for her children. Although it was discussed at the 14-day hearing, Dunn determined that Sandra did not

have factitious disorder. The only medical record available to him at that time referred to an incident in which treating physicians felt she had "purposefully extended a laceration on her head." He thought this incident "had more to do with a battle with the doctors, kind of an impulsive response" rather than an attempt to mislead them about her condition.

Dunn reviewed additional medical records provided by the Department about a week before trial. These records reflected subsequent incidents in which Sandra: (1) had some eyedrops which caused dilation of the pupils when she came to the hospital in August 2007 complaining of a dilated left pupil; and (2) had been giving herself heparin, a blood thinner, at the time of a different hospitalization in December 2007. Dunn opined at trial that, based on this additional information, "factitious disorder is more likely."

Relying on *Norfolk Southern Railway v. Bailey*, 92 S.W.3d 577 (Tex. App.—Austin 2002, no pet.), the Department contends that Appellants were not unfairly surprised or prejudiced by the Department's failure to disclose Dunn's diagnosis of factitious disorder because this represents only a refinement of his previous diagnosis, a perfection of his report, and an expansion of an already-disclosed subject. We disagree. In *Norfolk Southern*, the expert's diagnosis changed from asbestosis with no impairment to asbestosis with mild impairment. *Id.* at 580. Here, Dunn's opinion changed from an affirmative determination that Sandra did not have factitious disorder to the exact opposite determination, namely, that she likely does have factitious disorder. The Department's suggestion that this change of opinion is only a refinement of Dunn's

prior opinion that Sandra suffers from several personality disorders is unpersuasive. Dunn explained that the disorders he had previously diagnosed are conditions which can be managed by medication and therapy. However, he is aware of no successful treatment regimen for factitious disorder.

The court abused its discretion by ruling that Appellants would not be unfairly surprised or prejudiced by the admission of Dunn's testimony. This error requires reversal if we conclude that it probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1); *Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 863 (Tex. App.—Dallas 2006, no pet.); *see Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

Dunn was Sandra's own expert, so she was undoubtedly surprised when he was called by the Department at trial and testified against her. However, his testimony was only cumulative of other expert witnesses whose testimony has not been challenged (or not adequately challenged) on appeal. *See State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 881 (Tex. 2008) (per curiam). Drs. Qamar and Sanchez both testified that Sandra has factitious disorder or Munchausen by proxy syndrome. Iowa psychiatrist Truce Ordona testified that he diagnosed her as having Munchausen by proxy syndrome after treating her in 2003. Moreover, the Department could have waited until after Sandra called Dunn to testify on her behalf, presented her medical records to him, and then cross-examined him during which he would presumably reach the same conclusion he reached during his direct examination as the Department's witness. *See Hunter v. Ford Motor Co.*, 305 S.W.3d 202, 208 (Tex. App.—Waco 2009, no pet.) ("An expert's testimony

may be contradicted by the testimony of other witnesses or by cross-examination of the expert witness.").

Accordingly, we hold that the erroneous admission of Dunn's expert opinion testimony probably did not cause the rendition of an improper judgment. *See Dawmar Partners*, 267 S.W.3d at 881; *Gee*, 765 S.W.2d at 396-97. We overrule Bradley's and Paula's first issue and that portion of Sandra's third issue which incorporates their first issue.

### Best Interest of the Children-Termination

Sandra contends in her first issue that the evidence is factually insufficient to support the jury's finding that termination of the parent-child relationship is in the best interest of the children.

In conducting a factual sufficiency review, "a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re T.N.F.*, 205 S.W.3d 625, 630 (Tex. App.—Waco 2006, pet. denied).

The primary factors to consider when evaluating whether termination is in the best interest of a child are the familiar *Holley* factors, which include:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *T.N.F.*, 205 S.W.3d at 632.

*Desires of the Children:* Sandra refers to the testimony of the children's guardian ad litem that the children love Sandra "very much," enjoyed their visits with her, and showed affection toward her during the visits. This evidence is at best marginally relevant. *See In re S.N.*, 272 S.W.3d 45, 51-52 (Tex. App.—Waco 2008, no pet.) ("it is doubtful that such evidence is indicative of the [child]'s conscious, volitional desire to maintain a parent-child relationship or to permanently sever that relationship"). The record contains scant evidence that any of the children possess sufficient maturity to express an opinion regarding a parental preference.[9] *Id.*

*Children's Emotional and Physical Needs:* The children have the usual emotional and physical needs. According to a sibling assessment prepared by a social worker, they need individual therapy and non-sibling peer groups to help them each establish their unique identities. Sandra herself testified that she is not currently able to provide for the children's needs.[10]

*Emotional and Physical Danger to Children:* The primary evidence relevant to this factor are the children's medical histories which are replete with instances in which they have suffered emotionally and physically because of Sandra's false reports of non-existent medical conditions. The experts are divided on whether Sandra's condition can

---

[9] At the time of trial, the children were 9, 7, and 5 years old.

[10] For several of the best-interest factors, Sandra refers to evidence that Bradley and Paula are currently able to provide for the children's needs, but in deciding whether the evidence supports the verdict that termination of *Sandra's* parental rights is in the best interest of the children, our focus must necessarily be on Sandra and not other potential caregivers. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (best-interest inquiry focuses on "the individuals seeking custody").

be treated. Bradley and Paula both testified that Sandra's visits with the children should be supervised. This evidence supports a finding that Sandra poses a present or future risk of danger to the children.

*Parental Abilities:* Sandra herself testified that she is not currently able to provide for their needs. The experts are divided on whether Sandra's condition can be treated. This evidence supports a finding that Sandra currently lacks the requisite parental abilities.

*Available Programs:* A caseworker testified that Sandra has been attending counseling sessions three times per week, which exceeds what the Department requested. In her own testimony, Sandra did not highlight any particular programs she is participating in to improve her situation. Thus, there is conflicting evidence relevant to this factor.

*Plans for the Children:* Sandra's only plan for the children at the time of trial was for them to remain with her parents. Her parents testified that they would not allow her to be around the children. She acknowledged her diagnoses and testified of her desire to become well enough for her children to return. She could not give a specific time to accomplish this other than to say "[w]hatever time frame it takes." Thus, the evidence relevant to this factor supports the best-interest finding.

*Stability of the Home:* Sandra cannot provide the children a stable home at this time. The evidence relevant to this factor supports the best-interest finding.

*Sandra's Acts and Omissions (and Excuses):* The children's medical histories are replete with instances in which they have suffered emotionally and physically because

of Sandra's false reports of non-existent medical conditions. The experts are divided on whether Sandra's condition can be treated. The evidence relevant to this factor supports the best-interest finding.

*Summary:* Considering all the evidence in a neutral light, we hold that the evidence is such that the jurors "could reasonably form a firm belief or conviction" that termination of Sandra's parental rights was in the best interest of the children. *See J.F.C.*, 96 S.W.3d at 266; *T.N.F.*, 205 S.W.3d at 630. Thus, the evidence is factually sufficient on this element. We overrule Sandra's first issue.

### Best Interest of S.H.-Conservatorship

Bradley and Paula contend in their second issue that the court erred by denying their motion for new trial because there is no evidence to support the jury's refusal to find that their appointment as joint managing conservators is in the best interest of the children. They contend in their third and fourth issues that the challenged findings are against the great weight and preponderance of the evidence. Sandra incorporates these issues as part of her third issue.[11] We focus first on the evidence relevant to S.H.

Section 153.131 of the Family Code provides a rebuttable presumption that the appointment of a parent as a child's managing conservator is in her best interest unless the appointment "would significantly impair the child's physical health or emotional development." *See* TEX. FAM. CODE ANN. § 153.131 (Vernon 2008); *In re J.A.J.*, 243 S.W.3d 611, 615 (Tex. 2007). To successfully overcome this presumption:

---

[11] We assume without deciding that Sandra has standing to do so even though her parental rights have been terminated.

the non-parent must prove by a preponderance of credible evidence that appointing the parent as a managing conservator would result in serious physical or emotional harm to the child. Evidence must be presented to support the logical inference that some specific, identifiable behavior or conduct of the parent will probably cause that harm. This link between the parent's conduct and harm to the child may not be based on evidence that merely raises a surmise or speculation of possible harm. When a non-parent and a parent are both seeking managing conservatorship, "close calls" go to the parent.

*Taylor v. Taylor*, 254 S.W.3d 527, 536 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citations omitted).

We assume without deciding that Bradley and Paula presented evidence sufficient to rebut the parental presumption favoring Jack. Rather, we focus on whether the evidence conclusively establishes that it would be in S.H.'s best interest for them to be appointed as her managing conservators or whether the jury's adverse finding on this issue is against the great weight and preponderance of the evidence.[12] *See* TEX. FAM. CODE ANN. § 153.002 (Vernon 2008) ("The best interest of the child shall always be the primary consideration of the court in determining [conservatorship] issues"); *see also Hunter*, 305 S.W.3d at 205-06. We again apply the *Holley* factors. *See Holley*, 544 S.W.2d at 372; *T.N.F.*, 205 S.W.3d at 632.

In considering the no-evidence issue, we view all of the evidence in the light most favorable to Jack, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *Hunter*, 305 S.W.3d at 205-06. Because the

---

[12] Bradley and Paula do not challenge the jury's refusal to find that Jack's appointment "would significantly impair [S.H.'s] physical health or emotional development." *See* TEX. FAM. CODE ANN. § 153.131 (Vernon 2008); *In re J.A.J.*, 243 S.W.3d 611, 615 (Tex. 2007).

burden of proof at trial was a preponderance of the evidence on the conservatorship issues, we do not apply the heightened standard of review required for findings in parental-rights termination cases in which the burden of proof at trial is clear-and-convincing evidence. *See J.A.J.*, 243 S.W.3d at 616.

For Bradley's and Paula's contention that the adverse finding is against the great weight and preponderance of the evidence, we weigh all the evidence and may set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Hunter*, 305 S.W.3d at 206.

*Desires of the Child:* The record contains no evidence that S.H. possesses sufficient maturity to express an opinion regarding a conservatorship preference.

*Child's Emotional and Physical Needs:* S.H. has the usual emotional and physical needs. She needs individual therapy and a non-sibling peer group to help her establish her unique identity. Jack testified that such services are available in his home state and that he has a supportive family and lives in a good neighborhood where her needs can be met.

A social worker testified that, while S.H. was in Bradley's and Paula's care during the pendency of the case, her needs were being met appropriately.

*Emotional and Physical Danger to Child:* S.H. suffered emotionally and physically on numerous occasions because of Sandra's false reports of non-existent medical conditions. The parties agree that S.H. must be protected from Sandra. Jack testified

that, if Sandra were at some point permitted to visit S.H., he would make sure that "the proper safety rules [were] in place and followed."

There is conflicting evidence in the record regarding whether Bradley and Paula are willing and able to protect S.H. from Sandra. The Department's witnesses are generally not convinced of their willingness to do so. These witnesses are concerned because of past history and in particular because of the failure of Paula, a registered nurse, to acknowledge Sandra's condition despite a 10-year history of similar incidents involving Sandra or her children. However, Bradley and Paula presented evidence that Dr. Ordona initially assured them that Sandra did not suffer from Munchausen's although he stated in his deposition that he later did diagnose her with this condition. The social worker reported that Bradley and Paula want to follow the recommendations of the various professionals with regard to Sandra and the girls and "have chosen to accept to put their Grandchildren's needs above the needs of their daughter."

*Parental Abilities:* Jack testified about counseling services he has received to better understand S.H.'s needs and to gain the tools needed to develop a close relationship with her. He described what he learned in a 4-hour parent education program and how it would affect him if given custody of S.H.

The evidence indicates that Bradley and Paula are also capable of providing appropriate parenting for S.H.

*Available Programs:* Jack testified about various programs and services that are available in his home state to meet S.H.'s needs. Similar services are available to Bradley and Paula and have been employed during the pendency of the suit.

*Plans for the Child:* Jack told the jury about his plans for S.H.: how he would change his work schedule to maximize his time with her, how extended family would be available to help as needed, how he will allow her to maintain a relationship with her mother, grandparents and sisters as possible, and how he wants to provide her "a life of happiness" by showing her love and giving her the attention that she has been deprived in the past.

Paula testified that Bradley and she are "ready to raise the children for the rest of their lives but ready to allow [Sandra] to have some involvement in their lives" with appropriate "safety features."

*Stability of the Home:* Jack currently lives with his parents in an appropriate home and has no plans to move in the near future. Bradley and Paula also have an appropriate and stable home environment, although their continuing relationship with Sandra at least poses a potential threat to the stability of the home.

*Acts and Omissions (and Excuses):* Jack failed to pay child support when S.H. first moved away, but Sandra would not allow the court in that state to provide him her address so he could make proper arrangements. After being served, Jack came to Texas for the 14-day hearing. Before being permitted access to S.H., he submitted to numerous tests, interviews, and screening procedures. He has made ten or eleven trips to Texas to see S.H. He testified that he has called to talk with S.H. almost every week. He sought appropriate counseling and parent education services in his home state.

Paula testified that the regularity of Jack's phone calls was "erratic," perhaps twice a month. Bradley and she have been the primary caregivers for S.H. during the

pendency of the case. However, we have already reviewed the evidence regarding their unwillingness to accept Sandra's diagnosis and the consequences flowing from that. The jury could have inferred from the evidence that they did not come to accept the diagnosis until the eve of trial and could have questioned the sincerity of their acceptance.

*Sibling Relationships:*[13] Bradley and Paula cite *Autry v. Autry*, 350 S.W.2d 233, 236 (Tex. Civ. App.—El Paso 1961, writ dism'd), *Dalton v. Doherty*, 670 S.W.2d 422, 424 (Tex. App.—Fort Worth 1984, no writ), and similar cases for the proposition that it is not in the best interest of siblings to be separated absent "clear and compelling reasons." *See also* TEX. FAM. CODE ANN. § 162.302(e) (Vernon 2008) ("It is the intent of the legislature that the department in providing adoption services, when it is in the children's best interest, keep siblings together and whenever possible place siblings in the same adoptive home.").

However, there is no statutorily prescribed "clear and compelling" standard to be met before siblings may be separated. *See In re D.R.L.M.*, 84 S.W.3d 281, 303-04 (Tex. App.—Fort Worth 2002, pet. denied).

More importantly, the preference that siblings be kept together when possible applies only in cases involving children of the same marriage (or non-married parents) and not half-siblings. *In re K.L.R.*, 162 S.W.3d 291, 306 (Tex. App.—Tyler 2005, no pet.);

---

[13] The *Holley* factors are a non-exclusive list of considerations for the best-interest determination and other factors may also be considered. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re T.N.F.*, 205 S.W.3d 625, 632-33 (Tex. App.—Waco 2006, pet. denied).

*D.R.L.M.*, 84 S.W.3d at 303. Even the cases cited by Bradley and Paula recognize this limitation. *See Autry*, 350 S.W.2d at 236; *Dalton*, 670 S.W.2d at 424.

Nevertheless, it is undisputed that S.H.'s emotional well-being will be adversely affected by her separation from her half-sisters. Therefore, the impact of separating the girls is an appropriate consideration in evaluating what is in S.H.'s best interest. *See K.L.R.*, 162 S.W.3d at 306. And the evidence relevant to this factor indicates that it would be in S.H.'s best interest for Bradley and Paula to be appointed as her managing conservators (so long as they were also appointed as managing conservators of her half-sisters).

*Summary:* Viewing the evidence in the light most favorable to Jack, we cannot say that the evidence conclusively establishes that it would be in S.H.'s best interest for Bradley and Paula to be appointed as her managing conservators. Thus, we reject Bradley's and Paula's no-evidence challenge with regard to this issue.

Viewing the evidence in a neutral light, there is evidence on many of the relevant factors which would have supported a verdict in favor of Jack or in favor of Bradley and Paula on this issue. "When a non-parent and a parent are both seeking managing conservatorship, 'close calls' go to the parent." *Taylor*, 254 S.W.3d at 536. Thus, we reject Bradley's and Paula's contention that the jury's finding on this issue is against the great weight and preponderance of the evidence.

### Best Interest of M.H. and G.H.-Conservatorship

Bradley and Paula also contend in their second issue that the court erred by denying their motion for new trial because there is no evidence to support the jury's

refusal to find that their appointment as joint managing conservators is in the best interest of M.H. and G.H. They contend in their third and fourth issues that the challenged findings are against the great weight and preponderance of the evidence. Sandra incorporates these issues as part of her third issue.

The evidence relevant to Bradley and Paula regarding the *Holley* factors and keeping the girls together in a single family does not vary appreciably from what has already been stated, so we will not repeat it.

For their no-evidence claim, the issue on appeal is whether the evidence conclusively establishes that it would be in M.H.'s and G.H.'s best interests for Bradley and Paula to be appointed as their managing conservators. *See Hunter*, 305 S.W.3d at 205.

The Department's primary argument was (and is) that Bradley and Paula are not willing to protect the children from Sandra. There is ample evidence in the record to support the Department's position. After viewing all the evidence in the light most favorable to the verdict, we cannot say that the evidence conclusively establishes that it would be in M.H.'s and G.H.'s best interests for Bradley and Paula to be appointed as their managing conservators.

Nor do we agree that the challenged findings are against the great weight and preponderance of the evidence. *Id.* at 206. The jury heard conflicting evidence regarding what is in the best interest of the children and determined that the appointment of Bradley and Paula as managing conservators would not be in their best interest. We must defer to the jury on its resolution of these issues. *See Harris v. Tex.*

*Dep't of Family & Protective Servs.*, 228 S.W.3d 819, 829-30 (Tex. App.—Austin 2007, no pet.); *Hunter*, 305 S.W.3d at 206.

For these reasons, we overrule Bradley's and Paula's second, third and fourth issues and that part of Sandra's third issue which incorporates these issues by reference.

### Denial of Summary Judgment

Sandra contends in her second issue that the court erred by denying her no-evidence summary-judgment motion. "Where a motion for summary judgment is denied by the trial court and the case is tried on its merits, the order denying the summary judgment cannot be reviewed on appeal." *Moore v. Jet Stream Invs., Ltd.*, 261 S.W.3d 412, 427 (Tex. App.—Texarkana 2008, pet. denied) (citing *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966)).

We overrule Sandra's second issue and affirm the judgment.


FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray concurring with note)*
Affirmed
Opinion delivered and filed May 5, 2010
[CV06]


*     (Chief Justice Gray concurs in the judgment of the Court to the extent it affirms the trial court's judgment. He joins no part of the Opinion including its designation as such rather than as a memorandum opinion. A separate opinion will not issue, due in part to the already lengthy time this appeal has been pending.)