

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00026-CV

_____

IN THE INTEREST OF S.C., A CHILD

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 12-07-23157; Honorable Pat Phelan, Presiding

July 23, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, R.C., appeals the trial court's order terminating her parental rights to her daughter S.C.[1]  By a single issue, she maintains the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in S.C.'s best interest as specified in section 161.001(2) of the Texas Family Code.  We affirm.

---

[1] To protect the parent's and child's privacy, we refer to Appellant and other parties by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014).  *See also* TEX. R. APP. P. 9.8(b).

**BACKGROUND**

Appellant, in her mid-forties during the underlying proceedings, has had a drug problem since she was fourteen years old. She has seven children: three whom she raised, three teenage children to which her parental rights were terminated in 2004, and S.C., who was born in Vermont in 2009. S.C. was born with Hepatitis C which she contracted from Appellant's drug use. When S.C. was born, the Department for Children and Families of Vermont (DCF) (similar to Department of Family and Protective Services in Texas) became involved because of Appellant's history with DCF through her other children. S.C.'s father is A.C. A.C. also has a son, G.C., with another woman.[2] G.C. was born in Texas in 2005, but was living in Vermont with Appellant, A.C. and S.C. A.C. was eventually awarded custody of G.C. by a Vermont Court. When domestic violence issues arose between A.C., Appellant and her grown children, A.C. and G.C. returned to Texas. S.C. was one year old when A.C. left.

When Appellant failed to complete a drug court program that resulted in her incarceration, DCF contacted A.C. in 2012 and directed him to return to Vermont and pick up S.C. or she would be adopted out. DCF provided A.C. with round trip bus fare,factfinder and he brought S.C. to Texas.[3]

---

[2] Parental rights of both parents to G.C. were also terminated in the underlying proceeding, but they did not appeal.

[3] Several months before the final hearing, the trial court conducted a hearing to determine jurisdiction over S.C. The court ruled that the provisions of the Uniform Child Custody Jurisdiction Enforcement Act were not invoked because Vermont had not entered a child custody determination order.

Soon after A.C. and S.C. arrived in Texas, the Department of Family and Protective Services received an intake that A.C. had attempted to cash a forged check at a bank. When law enforcement became involved, a baggy containing what appeared to be a drug residue was found on A.C. S.C. and G.C. were with him at the time. Once the residue tested positive for methamphetamines, the Department removed the children from his care based on neglectful supervision and placed them with a paternal uncle and his wife. The Department moved forward with termination proceedings against Appellant, A.C., and G.C.'s mother. On January 3, 2013, the trial court signed an *Order for Actions Necessary for Return of Children* outlining what was required of Appellant to have S.C. returned to her. The Department caseworker testified she reviewed the order by phone with Appellant and mailed her a copy. The order was introduced into evidence at the final hearing.

The Department presented witnesses and evidence in support of termination of Appellant's parental rights. Appellant and her witnesses participated at the final hearing *via* phone from Vermont. Appellant testified candidly about her drug addiction and prior convictions for a 2004 assault and a 2007 conspiracy to distribute crack cocaine. Her witnesses, persons involved with programs related to her recovery, testified how well she was doing. Based on the testimony and evidence, the trial court entered an order terminating Appellant's parental rights to S.C. As requested, the trial court filed *Findings of Fact and Conclusions of Law* in support of its order. By her sole issue, Appellant asserts the evidence is both legally and factually insufficient to support the trial court's finding that termination was in S.C.'s best interest. We disagree.

## STANDARD OF REVIEW IN TERMINATION CASES

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (West 2008).[4] *See also In re C.H.,* 89 S.W.3d at 25-26.

In applying the clear and convincing standard onto our legal sufficiency standard, we review the evidence by considering all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re E.N.C.*, 384 S.W.3d at 802 (citing *In re J.F.C.*, 96 S.W.3d at 266). To give appropriate deference to the factfinder's conclusions, we

---

[4] Unless otherwise designated, all future references to section or § are to the Texas Family Code.

must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* As a corollary to this requirement, we also disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.[5] *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.*

In a factual sufficiency review, as a reviewing court, we must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 98 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(1) and termination is in the child's best interest. *See* § 161.001(1), (2) (West 2014); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

---

[5] This does not mean that a court must disregard *all* evidence that does not support the finding. To do so could skew the analysis of whether there is clear and convincing evidence. See *In re E.N.C.*, 384 S.W.3d at 802.

Appellant's parental rights to her child were terminated on the grounds enumerated in section 161.001(1)(D), (E), (N) and (O). She does not challenge any of those predicate grounds; she only challenges the trial court's best interest finding. Thus, we proceed to analyze whether termination of Appellant's parental rights was in S.C.'s best interest.

## BEST INTEREST

Notwithstanding the sufficiency of the evidence to support termination under section 161.001(1), we must also find clear and convincing evidence that termination of the parent-child relationship was in S.C.'s best interest. *See* § 161.001(2). There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). On the other hand, prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* § 263.307(a). A non-exhaustive list of factors to consider in deciding best interest is found at section 263.307(b) of the Family Code. The Supreme Court has set out additional factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors, generally referred to as the "*Holley factors,*" include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions

of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See id.*

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

## ANALYSIS

At the time of trial, Appellant was on furlough under the Department of Corrections in Vermont and was not allowed to leave the State. She explained that while on furlough she was allowed to be in the community but was under close supervision. She did not know when she would be formally paroled. She was living in transitional housing[6] and actively participating in programs dedicated mostly to her recovery. She also participated in parenting programs and completed some of the services required by the Texas Department of Family and Protective Services to obtain the return of her child. She believed S.C. could live with her in transitional housing until she could afford her own apartment.

---

[6] Transitional housing provides a bed for ninety days while the participant maintains sobriety, attends meetings and looks for employment. During one of her stays in transitional housing, Appellant became ill and was unable to find employment within ninety days, and after 120 days, her bed was given to another woman. Finding herself homeless, Appellant was incarcerated in January 2013 for several months for what she described as "a lack of residence."

She testified she had been a stay-at-home mother most of her life and had recently found part-time employment at a fast food chain. She admitted she has been in six rehabilitation facilities but contends that through various programs she has now been able to turn her life around. She has been on a "suboxone program" for years to help with her addiction.[7] She admitted relapsing in 2011 by using heroin and again three weeks before the final hearing by using cocaine.

Several witnesses from Vermont, who make up Appellant's support group, testified favorably about her accomplishments with her recovery. Specifically, her psychologist, the program manager for transitional housing, and a family support educator all testified to Appellant's motivation and positive attitude. However, none of them had observed her interact with S.C., and they could not attest to her ability to parent, only to her recovery in terms of substance abuse.

Appellant testified she and S.C. communicated by phone three days a week and they enjoyed their visits singing nursery rhymes and reciting the alphabet. Although she agreed S.C. was loved, safe and in a stable home with her paternal uncle and aunt, she did not believe it was in S.C.'s best interest for them to adopt her.

S.C. was four years old at the time of the final hearing and did not testify or make her wishes known. Even so, a child's preference should not be considered absent a showing of sufficient maturity. *See In re A.R.*, 236 S.W.3d 460, 480 (Tex. App.—Dallas 2007, no pet.). Additionally, evidence that a child loves a parent and enjoys visits is

---

[7] Suboxone is a maintenance medication used to alleviate drug cravings.

marginally relevant to a best interest finding. *See In re M.H.*, 319 S.W.3d 137, 150 (Tex. App.—Waco 2010, no pet.).

The need for permanence is a paramount consideration for a child's present and future physical and emotional needs, and the goal of establishing a permanent home is a compelling state interest. *See In re A.M.*, 385 S.W.3d 74, 83 (Tex. App.—Waco 2012, pet. denied). Appellant's brother lives in Vermont and she has a relationship with him; however, he is a registered sex offender. The program manager for transitional housing testified that only felons are permitted to live in transitional housing.

Regarding plans for S.C., Appellant testified that if she was given custody, she would "find some way" to get S.C. to Vermont because she was not allowed to leave the State at this time. When asked what her immediate plan was she responded, "I'm not sure right at that moment, to tell you the truth." As such, we believe that even though transitional housing is temporary, it is not an environment in which to raise a child and the decision to place S.C. in that environment reflects that Appellant's choices could pose a danger to S.C., now and in the future.

The caseworker testified that, assuming Appellant was complying with the requirements of her service plan and order for actions necessary to obtain the return of her child, she was not providing proof or documentation of compliance. Assuming Appellant was in compliance, recent improvement and compliance with a service plan do not preclude a finding that termination is in a child's best interest. *See In re A.C.B.*, 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.). They are factors to be considered in a determination of best interest. *Id.* The caseworker further testified that

Appellant relapsed twice, was incarcerated twice since S.C.'s removal and associated with her brother, a registered sex offender.

In favor of the trial court's best interest finding, the caseworker testified S.C. was placed with a paternal uncle and aunt in September of 2012, and was doing well. S.C.'s half-brother, G.C., lives with the same family. According to the caseworker, the children participate in activities, are bonded to each other and rely on one another. When questioned whether the uncle and aunt wish to adopt both children, she replied affirmatively. She also testified it would be against S.C.'s best interest to separate her from her half-brother.

In response to questioning from the Department's attorney, the paternal uncle testified he and his wife are committed to both children and it would not be in S.C.'s best interest to return to Vermont. He testified S.C. refers to him and his wife as her parents and does not ask for Appellant or get upset if she does not speak with her. He believed it would be in S.C.'s best interest to remain with him and his wife.

A.C. testified that while S.C. was an infant she ingested Appellant's maintenance drugs and required hospitalization. Appellant's continued efforts toward her recovery, her numerous attempts at rehabilitation and her support group notwithstanding, she relapsed three weeks before the final hearing. She was also incarcerated twice after S.C. moved to Texas. Evidence of recent improvements does not negate the probative value of a long history of drug use and irresponsible choices. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Appellant testified she was drug-free during her late twenties and aside from that time period has always struggled with drug addiction. Drug addiction

and its effect on Appellant's life is a course of conduct that could expose S.C. to future endangerment. Appellant's rehabilitation was not free from doubt and if awarded custody of S.C., a relapse by Appellant would leave S.C. without the care and stability she enjoys in her current placement. Furthermore, Appellant's support system was comprised of persons concerned with her recovery and not with S.C.'s well-being.

Based on the testimony and evidence presented, we conclude the evidence is legally and factually sufficient under the heightened standard of clear and convincing evidence to support the trial court's finding that termination of Appellant's parental rights to S.C. was in her best interest. Appellant's sole issue is overruled.

## CONCLUSION

The trial court's order terminating Appellant's parental rights to S.C. is affirmed.

Patrick A. Pirtle
Justice