# NO. 12-17-00122-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *HEATHER ESTERS,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

### MEMORANDUM OPINION

Heather Esters has filed a motion for rehearing, which is granted. We withdraw our June 21, 2017 opinion and order and substitute the following opinion and order in its place.

Esters seeks mandamus relief from the trial court's order granting Melinda Warner's motion for new trial.[1] In two issues, she contends that the trial court abused its discretion by granting the new trial and that she has no adequate remedy at law. We conditionally grant the writ.

### BACKGROUND

Esters and Warner were involved in a motor vehicle collision in February 2014. Warner sued Esters, alleging that she was injured as a result of the collision. At trial, Warner claimed she injured her left shoulder and suffered from a herniated disc in her neck. She sought past and future damages for medical expenses, pain and suffering, mental anguish, and physical impairment. Warner's treating physician, Dr. Ritesh Prasad, testified that she would need continuing medical treatment including physical therapy, cervical epidural steroid injections, medial branch blocks, intra articular shoulder injections, and radio frequency neurotomy. He further testified that Warner would need continued pain management and would continue to suffer from physical impairment. Dr. Charles Gordon testified that Warner needs disc

---

[1] The respondent is the Honorable Clay Gossett, Judge of the 4th Judicial District Court, Rusk County, Texas. The underlying proceeding is trial court cause number 2015-215, styled *Melinda Warner v. Heather Esters*.

replacement surgery for the herniated disc in her neck and will likely need replacement of the adjacent discs sometime in the future.

At the conclusion of trial, the jury found Esters negligent and awarded Warner $5,000 for past physical pain and mental anguish, $5,000 for past physical impairment, and $23,206.46 for past medical expenses. The jury did not award any future damages.

Esters filed a motion for judgment on the verdict, and Warner filed a motion for new trial. Warner alleged that the failure of the jury to award future damages was contrary to the overwhelming weight and preponderance of the evidence. Following a hearing, the trial court granted Warner's motion for new trial. This original proceeding followed.

## PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). To be entitled to mandamus relief, a relator must demonstrate that (1) the trial court clearly abused its discretion and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011). The relator has the burden of establishing both of these prerequisites. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding).

## NO ADEQUATE REMEDY BY APPEAL

In her second issue, Esters argues that she has no adequate remedy by appeal. The Texas Supreme Court has explained that "absent mandamus review," parties "will seemingly have no appellate review" of orders granting new trials. *See In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 209 (Tex. 2009) (orig. proceeding). Even if a party could obtain appellate review of a new trial order following a second trial, it could not obtain reversal of an unfavorable verdict unless it convinced an appellate court that the granting of the new trial constituted harmful error. *Id.* Furthermore, even if an unfavorable verdict were reversed and rendered in the party's favor, "it would have lost the benefit of a final judgment based on the first jury verdict without ever knowing why, and would have endured the time, trouble, and expense of the second trial." *Id.* at 209–10.

Accordingly, an appellate court may review the merits of a new trial order in a mandamus proceeding. *In re Toyota Motor Sales, U.S.A., Inc.*, 407 SW.3d 746, 759 (Tex. 2013) (orig.

proceeding). If a trial court abuses its discretion in granting a motion for new trial, there is no adequate remedy by appeal. *In re Columbia*, 290 S.W.3d at 210. Thus, because mandamus review is appropriate in this case, we must now determine if the trial court abused its discretion by granting a new trial. *See id.*; *see also* ***In re Toyota Motor Sales***, 407 S.W.3d at 762; ***In re United Servs. Auto Ass'n,*** 446 S.W.3d 162, 180 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (granting mandamus relief where trial court's reasons for ordering new trial not "legally appropriate" or grounded in facts of case).

## ABUSE OF DISCRETION

In her first issue, Esters argues that the trial court abused its discretion in granting Warner's motion for new trial because the evidence is factually sufficient to support the jury's damages findings. She further argues that the trial court's order does not pass either the facial validity or merits-based review set forth by ***In re Bent***, 487 S.W.3d 170 (Tex. 2016) (orig. proceeding).

### Standard of Review and Applicable Law

We review the merits of a new-trial order under the abuse-of-discretion standard familiar and inherent in mandamus proceedings. ***In re Bent***, 487 S.W.3d at 177-78. Under that standard, a trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. ***In re Cerberus Capital Mgmt., L.P.***, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).

Although trial courts have long been afforded broad discretion in granting new trials, a trial court's discretion to order a new trial is not "limitless." ***In re Columbia***, 290 S.W.3d at 210, 213; *see also* TEX. CONST. art. 1, § 15 (right to trial by jury "shall remain inviolate"). Just as an appellate court cannot substitute its judgment for that of the trial court, neither may the trial court substitute its judgment for that of the jury in granting a new trial. ***In re Wyatt Field Serv. Co.***, 454 S.W.3d 145, 152 (Tex. App.–Houston [14th Dist.] 2014, orig. proceeding).

When a trial court orders a new trial after a case has been tried to a jury, the parties are entitled to an understandable, reasonably specific explanation why their expectations are frustrated by a jury verdict being disregarded or set aside, the trial process being nullified, and the case having to be retried. ***In re Bent***, 487 S.W.3d at 175–76. Accordingly, a trial court, in

3

its order granting a new trial, must state a reason for doing so. *In re Columbia*, 290 S.W.3d at 213. The trial court's "stated reason" must be (1) legally appropriate, articulating a well-defined legal standard or a defect that probably resulted in an improper verdict, and (2) specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reason from the particular facts and circumstances from the case at hand. *In re Bent*, 487 S.W.3d at 173. If the trial court's order granting a new trial satisfies these facial requirements, an appellate court may conduct a merits review of the bases for the new trial order and grant mandamus relief if the record does not support the trial court's rationale for ordering a new trial. *Id.*

**Facial Validity**

In its order granting Warner's motion for new trial, the trial court concluded that the jury's (1) failure to find any future damages was "contrary to the overwhelming weight and preponderance of the evidence[;]" (2) answer that Warner suffered no damages for future physical pain and mental anguish, future physical impairment, and future medical expenses "is not only unsupported by the evidence but is directly contrary to all of the evidence introduced at trial[;]" and (3) awards for future medical care and expenses, past and future physical pain and mental anguish, and past and future physical impairment were "manifestly too small." The order also lists several pieces of evidence that were admitted at trial, which the trial court deemed "uncontroverted." We summarize that evidence as follows:

> The collision resulted in a severe impact between Warner's vehicle traveling at a high rate of speed and Esters's vehicle, which failed to yield the right of way;
>
> Warner suffered multiple injuries and severe bruising;
>
> Warner was diagnosed with impingement syndrome in her left shoulder, left shoulder adhesive capsulitis, a partial-thickness rotator cuff tear, and a herniated disc, verified by an MRI, which doctors testified was caused by the accident;
>
> Warner was diagnosed with injuries to her cervical facet joints, which her doctor testified was caused by the accident;
>
> Doctors testified that the injuries for which they treated Warner were caused by the accident;
>
> Warner's doctor testified that, in reasonable medical probability, she would need future medical treatment, including medial branch blocks, a radio frequency neurotomy, PRP injections, intra-articular shoulder injections, ongoing medical and pain management, physical therapy, and cervical epidural steroid injections;

4

Warner's doctor testified that she requires disc replacement surgery and, in reasonable probability, will need disc replacement surgery for subsequent problems in the adjacent discs and/or below the surgery site;

At the time of trial, Warner was midway through physical therapy and her next appointment was scheduled to occur within a week after trial;

Doctors testified that Warner would (1) need continued treatment; (2) experience pain and symptoms in the future as a result of the injuries sustained in the accident; and (3) continue to have physical impairment in the future;

Medical records and testimony demonstrated a loss of function in Warner's left shoulder;

Warner's doctor believed the adhesive capsulitis to be the "big issue" and he would try intra-articular injections and physical therapy, but would consider capsular release if her pain persisted;

On September 13, 2016, Warner received an intra-articular injection to alleviate her shoulder pain;

On September 20, 2016, Warner's left shoulder pain scored an eight to nine out of ten and, on October 27, scored a two;

At the time of trial, Warner was under the care of three doctors and disc replacement surgery had been scheduled to replace the herniated disc that doctors testified the accident caused;

Warner had "objective evidence of permanent injuries proved by multiple MRI imaging studies of injuries" caused by the accident;

Warner continued to suffer pain from the injuries caused by the accident and that pain would continue in the future.

The trial court noted that the jury found that Warner's past medical expenses resulted from the accident, but found zero damages for future physical pain and mental anguish, physical impairment, and medical expenses.

The trial court's order in this case does not comply with the requirements set forth by the Texas Supreme Court in **Bent**. *See id.* Rather, the trial court's explanation constitutes the type of "muddled" factual and legal sufficiency evaluation of the evidence that the supreme court has disapproved. *See id.* For instance, the order's stated reason that the findings were contrary to the "overwhelming weight and preponderance of the evidence" suggests a factual sufficiency analysis. However, the remainder of the order suggests a legal sufficiency analysis, i.e., that the court found Warner sustained damages as a matter of law. *See id.* The trial court's order claims that the evidence introduced at trial was "uncontroverted." If true, Warner conclusively established her claim and Esters presented no contrary evidence. Under such circumstances, as noted by the Texas Supreme Court in **Bent**, a judgment notwithstanding the verdict, not a new

trial, would have been appropriate, and the trial court failed to articulate a "reason for which a new trial is legally appropriate." *Id.*

Nor does the order explain how the evidence, or lack thereof, undermines the jury's findings as required by *Bent*. Although the trial court was not required to give a "detailed catalog of the evidence[,]" it was required to "assur[e] the parties that the jury's decision was set aside only after careful thought and for valid reasons." *Id*. While the order's recitation of certain evidence indicates that the trial court considered the facts and circumstances of the particular case, the order does not connect the evidence with an explanation as to why the damages findings for future medical care and expenses, past and future physical pain and mental anguish, and past and future physical impairment were "manifestly too small" or contrary to the overwhelming weight and preponderance of the evidence. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 689 (Tex. 2012). Regarding the jury's awards of $5,000 for past pain and mental anguish and $5,000 for past physical impairment, the order fails to detail any evidence or give any explanation as to why the jury's damages calculations were incorrect. Without such explanations, "parties in the case can only speculate about why the court ostensibly circumvented a critical constitutional right." *In re Toyota Motor Sales,* 407 S.W.3d at 749.

Therefore, we conclude that the trial court's order does not rise to a cogent and reasonably specific explanation of the trial court's reasoning. *In re United Scaffolding, Inc.*, 377 S.W.3d at 688. As a result, the trial court's order granting the motion for new trial is not facially valid as required by the Texas Supreme Court in *Bent*.

**Merits-Based Review**

Even were we to conclude that the trial court's new trial order satisfies the facial validity requirements of *Bent*, the record does not support the trial court's rationale for ordering a new trial. Whether the trial court abused its discretion in concluding that the jury's findings relating to future damages was against the great weight and preponderance of the evidence is a factual sufficiency question. To prevail on a challenge that the evidence is factually insufficient to support an adverse finding on an issue on which the complaining party has the burden of proof, that party must show that the adverse finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). The jury is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another, and a reviewing court may not impose its own opinion to the contrary.

6

*See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When presented with conflicting testimony, the fact finder may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

"The determination of what amount, *if any*, to award in future medical expenses falls within the fact finder's sound discretion." *Walmart Stores Tex., L.P. v. Crosby,* 295 S.W.3d 346, 345 (Tex. App.—Dallas 2009, pet. denied) (emphasis added). "When there is conflicting evidence about the severity of the injuries or about whether the injuries were caused by the collision, the jury has the discretion to resolve the conflicts, determine which version of the evidence to accept, and refuse to award damages." *Lanier v. E. Found., Inc.*, 401 S.W.3d 445, 455 (Tex. App.—Dallas 2013, no pet.). Because an award of future damages is always speculative, "appellate courts are particularly reluctant to disturb a fact finder's award of these damages." *Crosby,* 295 S.W.3d at 345. "[C]ourts have upheld jury awards of zero damages when both subjective and objective evidence of injuries existed, so long as the jury's verdict was not so against the great weight of the evidence as to be manifestly unjust." *Lanier*, 401 S.W.3d at 456. In this case, the record contains evidence that contradicts the trial court's assertion that the jury's future damages findings are contrary to the overwhelming weight and preponderance of the evidence and "directly contrary to all of the evidence introduced at trial." The evidence outlined in the trial court's order is not the only evidence that the jury heard. Esters argues, and we agree, that evidence introduced at trial could have supported the jury's failure to find future damages.

For instance, at trial, the evidence showed that Warner did not claim that she was injured immediately following the collision. The investigating officer testified that no injuries were reported to him and, on the accident report, he marked that Warner was uninjured. Additionally, officers cancelled the call to EMS. Warner admitted telling officers at the scene that she was not hurt. She testified that she did not feel injured, had no loss of consciousness, was unaware of any neck movement, and did not hit her head during the accident. Medical records demonstrate that when Warner went to the doctor several hours following the collision, she did not claim to suffer from any neck or back pain and her medical provider noted that Warner was negative for back pain. Dr. Prasad testified that Warner's statement that she did not feel injured, had no loss of consciousness or neck movement, and did not strike her head on anything at the time of the

7

accident was inconsistent with his diagnosis of a bulging disc injury caused by the accident.

Additionally, the jury heard evidence that Warner suffered from preexisting conditions similar to those she suffered after the accident. When Dr. Prasad initially met Warner, she complained of neck, back, and shoulder pain, as well as headaches. He testified that she denied neck and lower back pain before the injury. However, Warner's medical records demonstrate that she suffered from daily headaches, tension in her shoulders and neck, and back tenderness prior to the collision. Her medical records further state that she experienced pain between her shoulder blades, severe headaches, and back pain. Warner also admitted that pain diagrams completed both before and after the collision show similar complaints. In addition, Warner's medical records showed degenerative changes in her neck and shoulder. A radiology report regarding Warner's left shoulder notes the existence of slight osteoarthritis. Dr. Prasad admitted that Warner's bursitis, i.e., inflammation, could have been caused by something other than a collision, such as a degenerative condition or repeated use. Dr. Gordon acknowledged that Warner's MRI reflected evidence of spurring, which is unrelated to the accident. He also acknowledged that a disc injury could result from degenerative wear and tear. Dr. Prasad testified that Warner eventually complained of right arm pain in addition to her left shoulder, thus, he admitted the right arm pain could have happened over time.

The record further reflects that a lengthy time period passed during Warner's treatment with Dr. Prasad. Warner saw Dr. Prasad on July 25, 2014. She acknowledged that he released her from care at this time and advised her to follow up if she experienced additional problems. She went until September 21, 2015, without meeting with Dr. Prasad to complain of any pain or other physical problems. It was after this time that an MRI was conducted on September 30 and Dr. Prasad discovered Warner's disc injury. Because of the gap in complaints, Dr. Prasad admitted that Warner's disc injury could have been caused by some intervening event that happened during the approximate fourteen month lapse in treatment. The record demonstrates that Dr. Prasad had advised Warner to reduce her chiropractic care, but she continued seeing a chiropractor during the fourteen months in which she did not see Dr. Prasad. Dr. Gordon acknowledged the existence of reports that chiropractic care may aggravate problems in the upper spine.

The jury also heard evidence that, while Warner and her husband both testified that she was unable to work, Dr. Prasad's records state that Warner was working without any issues.

8

Warner testified that she worked at her hardware store for two years after the accident. Dr. Prasad testified that participating in overhead activities, reaching out, or bending over could aggravate Warner's shoulder and low back and irritate the disc. Warner later sold the store, in part, because she was burned out. She testified that she had no plans to return to work unless she wanted to. Her medical records reflect that she stopped working on February 29, 2016. In addition, her physical therapy notes indicate that she spent time painting and working around her home before her physical therapy appointment. Furthermore, while Warner testified that she experienced pain while sitting for long periods of time, her medical records state that she returned from a 5,000-mile cross country road trip without her condition worsening. Warner's husband testified that they drove 4,000 miles in 2015 and 5,600 miles in 2016. And Warner's orthopedic records reflect that her neck pain is "resolved."

All of the above evidence is relevant to the severity of Warner's injuries and the cause of those injuries. *See Lanier*, 401 S.W.3d at 455. The jury awarded $5,000 for past physical pain and mental anguish and $5,000 for past physical impairment. The trial court found these amounts to be manifestly too small. When, as in this case, "the jury hears conflicting evidence regarding the injury's cause or an alternative explanation for the injured party's reported pain, courts have upheld zero damage findings for physical pain despite the jury's finding that the injured party is entitled to damages for medical expenses." *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 398 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Additionally, in light of Warner's work history and traveling after the accident, coupled with the jury's ability to observe Warner and her demeanor during trial, the jury was entitled to conclude that her injuries did not warrant more than $5,000 in damages for past physical impairment. *See Jackson*, 116 S.W.3d at 772 ("the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity and that a claimant should not be compensated more than once for the same elements of loss or injury[]").

Moreover, regarding future damages, the jury heard evidence that Warner worked for approximately two years after the collision, suffered from degenerative changes and osteoarthritis, experienced headaches and pain in her neck, back, and shoulders before the accident, participated in lengthy cross country trips, went over a year without seeing Dr. Prasad, and was diagnosed with the disc injury over a year after the collision and since she had last seen Dr. Prasad. As sole judge of the weight and credibility of the evidence, the jury could reasonably

9

conclude that (1) any pain caused by the injuries sustained in the collision had been resolved, and (2) any remaining or future pain was attributable to other factors, such as a preexisting condition, degenerative changes, or both. The trial court was not permitted to substitute its judgment for that of the jury. *See Jackson*, 116 S.W.3d at 761; *see also In re Wyatt Field Serv. Co.*, 454 S.W.3d at 152. Based on the evidence presented at trial, we conclude that the jury's zero damages findings are not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See In re United Servs. Auto Ass'n,* 446 S.W.3d at 173; *see also Lanier*, 401 S.W.3d at 456. Therefore, the record does not support the trial court's rationale for granting a new trial and the trial court abused its discretion in granting Warner's motion for new trial.

## DISPOSITION

For the reasons set forth above, Esters has satisfied both prerequisites to mandamus. Accordingly, we ***conditionally grant*** Esters's petition for writ of mandamus and direct the trial court to (1) vacate its February 3, 2017 order granting Warner's motion for new trial, and (2) render judgment on the jury's verdict. We trust the trial court will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so ***within fifteen days of the date of the opinion and order***. The trial court shall furnish this Court, within the time for compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance.

**BRIAN HOYLE**
Justice

Opinion delivered October 18, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# ORDER

**OCTOBER 18, 2017**

**NO. 12-17-00122-CV**

**HEATHER ESTERS,**
Relator
V.

**HON. J. CLAY GOSSETT,**
Respondent

---

### ORIGINAL PROCEEDING

---

ON THIS DAY came to be heard the petition for writ of mandamus filed by **HEATHER ESTERS**; who is the relator in Cause No. 2015-215, pending on the docket of the 4th District Court of Rusk County, Texas. Said petition for writ of mandamus having been filed herein on April 14, 2017, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, ***conditionally granted***.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his order of February 3, 2017, granting Warner's motion for new trial; the writ will not issue unless the **HONORABLE J. CLAY GOSSETT** fails to comply with this Court's order within fifteen (15) days from the date of this order.

It is further ORDERED that all costs of this proceeding shall be adjudged against the party incurring same.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*